## MOORE *vs.* THE STATE OF GEORGIA.

1. On the trial of an accusation for a misdemeanor, charging the sale of liquors on a specified day to a named person, and other persons to the accuser unknown, a joint sale to both, or a several sale to either, made in any transaction in which the named person participated, may be established as the basis for a conviction, but not a several sale to a person, known or unknown, made when the named person was not present, and in which he was not concerned.
2. Under the charge in an accusation (not an indictment) which alleges a sale of liquors to a person unknown to the accuser, there can be no conviction for a sale made to a person who was known to him when the accusation was preferred.
3. A boy of ten years of age is a competent witness if he understands the nature of an oath, and of this the court is to be the judge.

October 28, 1887.

Liquor. Evidence. Indictment. Accusation. Witness. Before Judge VAN EPPS. City Court of Atlanta. June Term, 1887.

Giles Moore was arraigned and tried on an accusation charging that he "did sell and barter to one Charley Harper, and other persons to deponent unknown, for a valuable consideration," liquors, in Fulton county, where such sale was prohibited by the general local option law at the time. The evidence was, in brief, as follows: A policeman, accompanied by two others, went to Moore's house

and looked through it to find whiskey, but found none. Moore was absent. Returning, shortly afterwards, he met the policemen, who told him of their visit and asked if he had whiskey. He replied that ho had some in a bottle. They went to the house, and Moore unlocked a chest and took out a quart bottle half full of corn whiskey and invited the men to drink, which they did. They made search of the house then and at other times, but failed to find any other liquor. Moore was seen to get jugs from the express office three or four times a week all the winter. Several empty jugs were found at his house; they smelled as if whiskey had been in them; some of them had contained kerosene oil. Harper testified that he bought whiskey several times at the house from Moore's wife and paid her ten cents a drink for it, Moore being at these times absent from the room, but on the premises; and that the whiskey was kept in a chest and served in glasses. Felix Foster testified, substantially to the same effect, as to sales made to himself.

Several witnesses testified for the defendant, in brief, as follows: He kept a small restaurant at his house, but kept no whiskey for sale. His fifteen year old son, who lived with him, drove his wagon and hauled jugs and other articles from the express office for numerous persons, but never carried any to defendant or to the house. There were sometimes crowds around defendant's place, but they were no more than are usually to be found about the place of business of a colored man, or more noisy than colored people usually are. Charles Harper's character was bad, and the witnesses would not believe him on oath. He and defendant had had difficulties with each other and were on bad terms. Felix Foster had stated to defendant in the presence of his wife that Harper was discovered by his employer drunken on whiskey obtained from Foster, and that this employer told Foster that if he didn't swear against Moore he would put detectives after him (Foster) for selling whiskey to Harper. The defendant, in a lengthy

statement repeated substantially what his witnesses had sworn, and said that if his wife had ever sold whiskey to any one, it was without his knowledge or consent.

In rebuttal, the State introduced John Roberts, ten years old, who testified that he saw Foster go to Moore's house and return with a bottle of whiskey in his pocket, but did not know where he got it. He further testified as follows: "I don't know what would become of any one if they were to swear a falsehood. I don't know the effect of an oath. God made me. My mother has never taught me anything about the bible. I don't go to Sunday-school. I have never told any one about Felix's getting the whiskey until now. I have never talked to any one about this case," etc. A witness testified to Harper's good character.

The defendant was found guilty, and moved for a new trial on the following grounds:

(1)–(3) Because the verdict was contrary to law and evidence.

(4) Because the court admitted the testimony of Foster, over objection on the ground that there was no charge in the accusation as to any sale to him.

(5) Because the court admitted the testimony of Roberts, one objection being the same as just stated in the preceding ground, and the other "that the witness did not know the effect of an oath, did not know what an oath was, and did not know what would be done with any one who would swear a falsehood."

(6) Because the court refused to charge that any evidence regarding any sale made to any other than Harper, was not to be considered against the defendant here.

The motion was overruled, and the defendant excepted.

W. J. & J. R. ALBERT; J. F. DANIEL, for plaintiff in error.

H. C. GLENN, solicitor city court, for the State.

BLECKLEY, Chief Justice.

1. The accusation has but a single count, and alleges a sale made on the first of May, 1887, to " Charley Harper, and other persons to deponent unknown." By a liberal construction it may embrace a joint sale, or a several sale, or both, or a plurality of either, or a plurality of one with a unit of the other, or a plurality of both, made at the same time; but it gives no hint of several sales made at different times, and in one of which Harper was concerned, and in the other not concerned, nor even so much as present when it took place. The court, however, (as we infer from the record and from the argument of counsel,) both in admitting evidence, and in charging the jury, treated the accusation as having this wide range, that is, as covering two transactions occurring at different times, with the first of which, according to some of the evidence, Harper was connected, but to the second of which, according to to all the evidence, he was no more related than he was to the battle of Brandywine. Every sale, when constituting a separate and distinct transaction, is a distinct offence, and conviction for a sale to one person is no bar to a prosecution for a subsequent sale to a different person. *Downing vs. The State*, 66 *Ga.* 160; General Local Option Act §§6, 10.

On the trial of an accusation for a misdemeanor, charging the sale of liquors on a specified day to a named person, and other persons to the accuser unknown, a joint sale to both, or a several sale to either, made in any transaction in which the named person participated, may be established as a basis for a conviction, but not a several sale to a person, known or unknown, made when the named person was not present, and in which he was not concerned.

2. There was evidence tending to show that when the accusation was preferred, the police, including the accuser, had knowledge that the testimony going to show a sale to

a person other than Harper, would identify Felix Foster as that person. If this was in fact the state of the accuser's information or knowledge, the name of Foster should have been alleged both in the accusation and the affidavit on which it was founded. That affidavit did not have to be, nor was it, positive, but only "to the best of deponent's knowledge and belief." If he knew or believed that Foster was one of the persons to whom a sale was made, then the descriptive terms, "and other persons to deponent unknown," do not apply to Foster, and consequently the sale to him is not embraced in the accusation, and no conviction could be had for that sale. Whatever may be the rule as to proving such an averment when made by a grand jury in a bill of indictment, (see 4 *Ga.* 141, 142,) the averment in a mere accusation founded on the affidavit of an individual, is examinable just as is any other fact involved in the case. To put a citizen on trial for crime upon alleged facts vouched only by the oath of a private person "to the best of his knowledge and belief," is quite loose enough, without allowing the latter to conceal his real knowledge and belief as to a part of the facts, by describing something as unknown which he knows as well as he does the other ingredients of the imputed offence.

Under the charge in an accusation (not an indictment) which alleges a sale of liquors to a person unknown to the accuser, there can be no conviction for a sale made to a person who was known to him when the accusation was preferred.

3. For children to be competent as witnesses, it is not requisite that they should profess to know what becomes of any one who swears to a falsehood, or the effects of an oath. If they know their own ignorance touching these great mysteries and candidly avow it, there is the more reason to think they have some clear knowledge on other subjects and will be candid in communicating it. It is enough for mere competency if they know the *nature* of

an oath. Code, §3856. And whether they have such knowledge is to be determined by the court, and not by themselves. Code, §3859 ; *Peterson vs. The State,* 47 *Ga.* 524 ; *Johnson vs. The State,* 61 *Id.* 35. Compare *Johnson vs. The State,* 76 *Ga.* 76. In the present case, the witness was ten years of age, and his evidence in the record, including his frank admission of ignorance, is intelligent, lucid, consistent and to the point. Indeed, it is quite apparent that the boy's intelligence, and not his want of it, is what rendered his testimony distasteful to the accused.

Comparing the motion for a new trial with what has been said under the first and second heads of this opinion, it results that the court erred in not granting the motion ; there being no indication in the record, nor was it contended in the argument, that the testimony touching a sale to Foster was by the court restricted in its effect to show-ing, inferentially, the consent of Moore to a sale to Harper made in Moore's absence by his wife. Under the special facts of this case, if such a restriction was put upon the evidence, the same should affirmatively appear.

Judgment reversed.