## YOUNG *v.* THE STATE.

1. Where a motion for a change of venue was made on the ground of the existence of prejudice, bias, and feelings of animosity against the defendant in the county where he was indicted, and that an impartial jury could not be obtained there, and the evidence introduced on the subject was conflicting, this court will not reverse the exercise of discretion by the presiding judge in denying the change of venue, unless it has been abused.

2. Where the evidence did not involve the defense of alibi as one of the issues in the case, there was no error in failing to charge on that subject, in the absence of a request so to do, although the theory of alibi might have been included in the prisoner's statement.

3. Although the presiding judge at first instructed counsel for the defendant that they must read the law to the court and not to the jury, yet where he afterwards told one of them to proceed with the reading, and the decision under discussion was in fact read to the jury, this will not require a reversal.

4. Where the competency of a child, twelve years of age, to testify as a witness was questioned, and the court examined her to test her competency, and it appears from her answers that the court did not abuse his discretion in holding her competent, this court will not interfere with such ruling.

5. The indictment having alleged that the deceased was murdered by the use of a gun, these were material and essential averments, and the defendant's plea of not guilty put both of them in issue. There was nothing in the evidence or the prisoner's statement, nor was there any admission by his counsel, which authorized a charge to the effect that the defendant's contention was that while there was a homicide, and while the deceased was killed with a gun and under circumstances which may show an unlawful killing, he was not the person who perpetrated the offense, and that he did not commit the homicide or fire the gun that killed the deceased; and that the jury would be relieved to some extent in their investigation of the questions that ordinarily arise in criminal cases. This charge requires a reversal.

5(*a.*) (Per COBB, P. J., and LUMPKIN, J.) We dissent from the ruling of the majority in the preceding note to the effect that the charge of the court required a reversal. This is the third conviction of the defendant of this offense. When considered in connection with the entire charge, the undisputed evidence introduced by the State, the fact that the defendant introduced no evidence, and the statement which he made on his own behalf, we do not think that the charge referred to requires a new trial.

Argued March 19,—Decided May 24, 1906.

Indictment for murder. Before Judge Lewis. Baldwin superior court. January 31, 1906.

Albert Young was charged with the murder of Gus King, and was convicted, with recommendation that he be imprisoned for life. He moved for a new trial, which was denied, and he excepted.

*John R. Cooper* and *Hines & Vinson,* for plaintiff in error.

*John C. Hart, attorney-general,* and *Joseph E. Pottle, solicitor-general,* contra.

LUMPKIN, J. 1. The defendant made a motion for a change of venue, on the ground of the existence in Baldwin county, where the indictment was found, of prejudice, bias, and feelings of animosity against him. No written motion for a change of venue is contained in the record, but the ground is thus stated in the motion for a new trial. Evidence was introduced pro and con on this subject, the defendant seeking to show that he could not obtain a fair and impartial trial in that county, and that an impartial jury could not be obtained to try the case, while the evidence for the State tended to show the reverse. The determination of a motion for a change of venue must, to a considerable extent, rest with the presiding judge. "If, from the evidence submitted, the court shall be satisfied that an impartial jury can not be obtained to try the case, the judge shall transfer it to any county that may be agreed upon," etc. Penal Code, § 939. To show that there was evidence on which the judge could legitimately have based his judgment, it is only necessary to quote the following testimony of the sheriff: "I am sheriff of this county, and I see everybody in this county. I do not think that there would be any difficulty in getting a jury that would give him a fair and impartial trial." *Rawlins* v. *State,* 124 *Ga.* 31.

2. Error is assigned because the court failed to charge on the

subject of alibi. The evidence did not require such a charge; and it has been held that it is not error to fail to charge in regard to a particular theory which might arise solely from the defendant's statement, without a request therefor. The court did charge generally as to the statement and the right of the jury to believe it. *Irby* v. *State,* 95 *Ga.* 468; *Walker* v. *State,* 118 *Ga.* 757.

3. The third and fourth grounds of the motion, in effect, complain that the court at first stopped one of the counsel for the defendant from reading to the jury the facts as reported when this case was formerly before the Supreme Court (122 *Ga.* 725), and that subsequently he informed the other counsel for the defendant that he must read the law to the court, but after some colloquy told him to go on, and in fact the decision was read to the jury. This furnishes no ground for reversal.

4. The evidence of Lugenia Butts, a child of twelve years of age, was admitted over the objection that she did not know the sanctity of an oath; that she was too young to testify, being only ten years of age at the time the crime was committed, and that a child of that age would not be responsible if she committed a crime. The preliminary examination of this child was sufficient to satisfy the presiding judge that she was a competent witness. She stated her name and age, the county of her residence, and that she had been to school for sometime and could read but not write. She then said, "I don't know who made the world, and who made everything. I know it is wrong to tell a lie. People who tell lies and who do wrong go to torment when they die. I know what I am here for, to do right. I was just now standing out there and a gentleman swore me. I remember that. I swore to tell the truth. I say that people that tell lies and do wrong will go to the bad world." On cross-examination she did say, "I do not know the nature of an oath. I don't know what it is to take the Bible in my hands and swear in a case. I swear that I will tell the truth." Still later, in answer to a question of counsel she said, "I don't know what the sanctity of the oath is." It is not at all surprising that a child twelve years of age should not be able to explain with great accuracy such terms as "the nature of an oath," and the "sanctity of an oath;" but it is evident that she sufficiently understood its nature and binding force to be a competent witness. The question is rather whether the child in fact understands the nature

of an oath, than whether she can explain or even understand legal terms in regard to competency. The ruling of the presiding judge on this subject will not be readily reversed, unless he abuses his discretion. *Young* v. *State, 122 Ga. 726.* ·

5. Thus far there is no diversity of opinion. Justices Evans, Beck, and Atkinson are of the opinion that one charge given by the court requires a reversal. Their views are stated as follows, by them: "The court charged the jury as follows: 'His [defendant's] contention is that while there was a homicide, while Gus King was killed with a gun and under circumstances which may show it was an unlawful killing and was murder, that he was not the person that perpetrated the offense, that committed the homicide, that he did not fire the gun that took the life of Gus King; and you would be relieved to some extent in your investigation of the questions that ordinarily arise in criminal cases. There is no dispute in this case that the homicide was committed. There is no dispute that Gus King was killed, and killed with the gun, as charged in the bill of indictment. These facts are not disputed facts in this case. The main question for the determination of the jury in this case, the real question for your determination, relates to the identity of the person who took the life of Gus King. The question for your determination in this case is whether or not the defendant now on trial was the person that fired the gun, as charged in this indictment,—that took the life of Gus King.' The defendant excepts to that charge, and assigns error thereon, among other things, for the reason that there was no admission by the defendant or his counsel that the deceased was murdered, or killed with a gun, or that it was an unlawful killing. There is nothing in the record which pretends that counsel for the accused admitted on the trial the things mentioned in the charge as not being in issue. The only words in the defendant's statement tending to admit those things are as follows: 'Anybody that knows directly how that man was killed, they killed him. . . Aus Hardy did not know that man was killed unless he killed him himself. . . It is impossible for me to tell how that man was killed.' The most that could be said of these words is that they could be construed into an admission that the defendant was killed. There is no admission that the killing was under such circumstances as to make the homicide murder, nor do they admit that the homicide was accomplished

by the use of a gun. It was alleged, in the indictment, that the deceased was 'murdered' by the use of a 'gun.' These were material and essential averments in the indictment. The defendant's plea of not guilty put both of them in issue. Being placed in issue, there was no way to avoid the issue, except by withdrawal by the defendant personally, or by his counsel for him. There was no such withdrawal; and the court in so instructing the jury as to withdraw from them the determination of those issues committed error. The court may have been of the opinion that the evidence in the case was overwhelmingly against the defendant on these issues, but such would not have authorized him to withdraw the issues from consideration of the jury. If the court could withdraw these issues, there is no principle which would prevent the withdrawal of any other issue in the case. It may as well be said that all issues may be withdrawn, and that where the court thought the evidence demanded the conviction of the defendant, the court could direct a verdict of guilty. It will hardly be contended that this could be done in any criminal case, in the absence of a statute. Certainly it could not be in a felony case, with or without a statute."

To this view I can not agree, and from the judgment of reversal I must respectfully dissent. Presiding Justice Cobb concurs with me. Our opinion upon this point is as follows: The evidence introduced on behalf of the State proved beyond question that the deceased came to his death by being shot with a gun loaded with shot. One witness said: "He was covered with shot from about the middle, and there was one in his head. I ran a straw in the one in his head. It went through his head. I would have supposed that one shot alone would have caused his death." Other evidence clearly established the homicide. It also indicated with almost equal certainty that the deceased was killed by a person concealed behind a pine bush located on the side of the road on which the deceased was traveling. There was no conflict in the evidence introduced by the State as to any material matter, and the defendant introduced no evidence, but relied solely upon his statement. This consisted mainly of a denial of guilt, and a complaint that the witnesses were of bad character and were trying to swear his life away; a rather weak allegation or intimation of an alibi; and certain statements, not denying the crime, but seeking to indicate that it was committed by some other person. Thus he said, "The whole

settlement was mad with that man (the deceased) about the way he was living. . . Anybody that knows directly how that man was killed, they killed him. There was Aus Hardy, mad with him about the way he done his girl. It is impossible for anybody to come in the court-house and say point blank I killed that man. I didn't know the man was killed. Aus Hardy don't know how that man was killed, unless he killed him himself." As the case will be returned to the superior court for a new trial, we deem it not best to enter into a full discussion of the evidence in order to show that the crime was unquestionably committed, and that the evidence, while circumstantial in its character, pointed to the accused as the perpetrator, with a certainty which authorized the verdict of the jury. This is the third conviction of the defendant for the same offense. The first verdict was set aside as not sufficiently supported by the evidence to exclude every other reasonable hypothesis save that of the guilt of the accused. 121 *Ga.* 334. On the subsequent trials the evidence for the State was strengthened on material points. The second verdict was set aside because the court declined to examine a child who was alleged to be incompetent, in order to test her competency as a witness. 122 *Ga.* 725. Under the facts, we do not think that a third verdict should be set aside because of the charge referred to. Even if there were some slight inaccuracy in the expression "his contention is," we do not think that this is sufficient to have injured the defendant, or to require the case to be sent back for a fourth trial.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent, and Cobb, P. J., and Lumpkin, J., who dissent.*