## REECE v. THE STATE.

1. Under the Penal Code (1910), § 1038, and the Civil Code (1910), § 5862, children who do not understand the nature of an oath are incompetent witnesses. But it is left to the sound discretion of the trial court to determine whether or not a child of tender years is a competent witness; and where, on the trial of one accused of murder, the court examines a boy of eight years of age as to his understanding of the nature of an oath, and decides that he is competent to testify, the Supreme Court will not grant a new trial, where it does not appear that the discretion of the court has been manifestly abused.

(a) Such discretion was not manifestly abused in the present case.

(b) Where, on the trial of one charged with murder, the court had decided that the only eye-witness to the homicide introduced by the State, a boy eight years of age, was a competent witness, it was erroneous to charge the jury that they might, if they saw fit, disregard his testimony altogether if they thought from the preliminary examination that the witness was incompetent to testify on account of his youth. The competency of the witness was a question for the court to decide, but the credibility of the witness was for the jury. But as the charge was more favorable to the defendant than authorized by law, such charge will not cause a reversal.

(c) The court did not err, under the facts of this case in failing to instruct the jury that they should disregard the evidence of the eight-year-old witness for the State.

2. Under the Penal Code (1910), § 1024, declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, are admissible in evidence as part of the res gestæ.

(a) Where, on the trial of one charged with murder, a witness for the defendant had testified that he arrived at the scene of the homicide about half an hour after he heard the shot fired, it was not error for the court to exclude the following question propounded by counsel for defendant, and the expected answer as stated, viz.: " Q. I will get you to state whether or not when you got there Mr. Reece's wife said she shot him [the deceased] ? " the expected answer being that Mrs. Floyd Reece admitted killing the deceased.

(b) While this evidence was not objectionable on the ground that it was permitting the wife to testify for the husband, it could only be admitted on the ground that it was part of the res gestæ. The evidence was not of that spontaneous character, and so nearly connected in point of time with the main event, as to render it admissible as part of the res gestæ, nor does it appear to have been entirely free from the suspicion of device or afterthought.

3. The court did not err in his rulings on questions of the admissibility of evidence, as set out in the third and fourth divisions of the opinion.

4. The verdict was supported by the evidence.

No. 3472.    MARCH 15, 1923.

Indictment for murder. Before Judge Blair. Cherokee superior court. October 21, 1922.

*A. J. Henderson* and *Morris & Hawkins,* for plaintiff in error.

George M. Napier, attorney-general, John S. Wood, solicitor-general, and Seward M. Smith, asst. atty.-gen., contra.

HILL, J. Floyd Reece was indicted for the offense of murder, and it was alleged that he willfully and unlawfully and with malice aforethought did kill and murder Guy Stringer with a shotgun, thereby inflicting a mortal wound from which Stringer died. On the trial of the case the jury returned a verdict of guilty and recommended life imprisonment in the penitentiary of the State; and the defendant was sentenced accordingly. A motion for new trial being overruled, the defendant excepted.

1. The first, second, and third grounds of the amendment to the motion for new trial will be considered together, as they involve the same principle. The first ground assigns error upon the overruling of the objection of counsel for the defendant to the evidence of the witness Dan Stringer, an eight-year-old son of the deceased, upon the ground that the witness was incompetent under the law to testify, in that he was so young that he did not understand the nature or sanctity of an oath; and upon the ruling of the court permitting this witness to testify over the above objection. The second ground assigns error upon an excerpt from the charge of the court, which was in part as follows: " You will regard all the testimony of the witness on the preliminary investigation of the witness as made by the solicitor-general, the defendant's counsel, and the court as to his competency as a witness; and if you reach the conclusion that he was an incompetent witness under the rule of law which I have given you in charge, you may disregard the testimony altogether. On the other hand, if you reach the conclusion that he was a competent witness under this rule of law, then you may give to his testimony such weight or such consideration as you may think it entitled to in arriving at the truth of this case." The third ground assigns error upon the failure of the court to instruct the jury that the witness, Dan Stringer, was an incompetent witness under the law, and that the jury should disregard his testimony. As observed, these three grounds deal with the same subject-matter, and they will be treated together in this division of the opinion. The first question that arises for consideration is, was the witness, Dan Stringer, competent to testify under our law? The Penal Code (1910), §

1038, and the Civil Code (1910), § 5862, provide: "Persons who have not the use of reason, as idiots, lunatics during lunacy, and children who do not understand the nature of an oath, are incompetent witnesses." The preliminary examination of the witness, Dan Stringer, by the solicitor-general touching his competency as a witness was as follows:

Q. Your name is Dan Stringer? A. Yes sir.

Q. How old are you, Dan? A. I am eight.

Q. Have you ever been to school? A. Yes sir.

Q. How much have you been to school, Dan? In all how long have you gone to school? About four or five years.

Q. Can you read? A. A little.

Q. Do you know what happens to boys who swear they are going to tell the truth and don't tell the truth? A. Yes sir.

Q. What happens to them? A. The ones telling the truth goes to the good world.

Q. Where do those that don't tell the truth go when they die? A. Bad world.

Q. Have you got any brothers or sisters? A. I have got a brother.

Q. What is his name? A. Gilbert.

Q. Is he older than you? A. Older.

Q. Is your mother living? A. Yes sir.

Q. Is your father living or dead? A. He is dead.

Q. Is your grandmother living or dead? A. She is dead.

Q. Your grandmother Stringer? A. She is dead.

Q. Who have you been living with since your father died, the most of the time who have you been living with? A. Uncle Milton.

Q. Where does he live? A. South Georgia.

Q. Are you living with your Uncle Milton now, or your mother or grandfather? A. My mother.

Q. Over at the home of your grandfather? A. Yes sir.

Examination by Mr. Morris, of counsel for defendant:

Q. When were you eight years old? A. I was eight before I went to South Georgia.

Q. Do you know what year you were eight years old in? A. No.

Q. Do you know what month? A. No.

Q. You know what day of the month? A. No.

Q. You know what week? A. No.

Q. How many years did you say you went to school? A. Four or five.

Q. How old were you when you started to school? A. I have forgotten how old I was.

Q. You have forgotten how old you were when you started to school. Do you know whether you were three years old or not when you started to school? A. No sir.

Q. Do you know whether you was four years old when you started to school? A. No sir.

Q. Do you know whether you was two? A. No sir.

Q. Do you know whether you was one year old when you started to school? A. No sir.

Q. Do you know what is meant by the sanctity of an oath? A. No sir.

Q. Do you know what is meant by an oath? A. No sir.

Q. Do you know what is meant by the nature of an oath? A. No sir.

Q. You don't know a thing about that do you? Do you know what it is to take an oath? A. No sir.

Q. Do you know what the punishment is for perjury? A. No sir.

Q. Do you know whether or not there is any punishment for perjury or false swearing? A. No (shaking head).

Q. You don't understand what is meant by an oath, do you, or what is meant by swearing, do you, Dan? A. No sir.

Q. You don't understand what is meant by the sanctity of an oath or understanding of an oath, do you? A. No sir.

Q. You don't know what the difference is in telling anything in the court-house and out of it, after an oath has been administered? A. No sir.

Q. You don't know that there is any difference do you? A. No sir.

Q. You don't know why you put your hand on the book and was sworn here this morning, do you? A. Yes sir.

Q. Why were you, why was it Dan, do you know? A. I don't know whether I do or not.

Further direct examination by Mr. Wood:

Q. You remember when you was in here this morning putting your hand on this bible? A. Yes sir.

Q. You remember the oath that you said then, that you were to tell the truth, and nothing but the truth in this case? A. Yes sir.

Q. Do you know what that book is? A. Yes sir.

Q. What is it? A. Bible.

Q. It is a bible. After you put your hand on that book do you know whether it would be wrong for you to tell a story, tell something that is not so? A. Yes sir.

Q. Would it be wrong? A. It would be wrong.

Q. Do you know that it is wrong to tell something that isn't so? A. Its wrong.

Questions by the court:

Q. What is your name? A. Dan.

Q. Dan, why did you put your hand on the book this morning and the lawyers over there say something to you; what was the purpose of it? A. To tell the truth.

Q. Do what? A. To tell the truth.

Q. Did you understand when you did that you were doing that for the purpose of telling the truth? A. Yes sir."

It is insisted by counsel for plaintiff in error, that, under all the above evidence and certain decisions of our court, the witness was not competent to testify in the case, that his evidence was material, and that without it there can be no conviction in the case; and therefore that the rulings of the court complained of require the grant of a new trial. The plaintiff in error relies upon the cases of *Johnson* v. *State,* 76 *Ga.* 76, where it was held: "From the preliminary examination of the child of six years of age, on whom a rape was alleged to have been committed in this case, it does not appear that she sufficiently understood the obligation of an oath or the punishment the law imposes upon its violation, or that she had the slightest suspicion of any future, much less of any future punishment for perjury or other bad conduct in this life, so as to have made her a competent witness;" and *Miller* v. *State,* 109 *Ga.* 512 (35 S. E. 152), where it was held: "From the preliminary examination of the child on whom a rape was alleged to have been committed in this case, it does not appear that she sufficiently understood the nature and obligation of an oath or of the responsibilities attaching to a witness who is sworn to tell the truth;" and the case of *Young* v. *State,* 122 *Ga.*

725, 726 (50 S. E. 996), where it was held that the child was incompetent to testify against the accused under the facts of that case. We are of the opinion that the facts of those cases are different from the facts in the case at bar. In the *Johnson* case the evidence discloses that the child did not know the nature or character of an oath, and also in the other cases mentioned; and while it is true that in response to some of the questions propounded by counsel for plaintiff in error in the present case the witness answered that he did not know what is meant by "the sanctity of an oath," and what is meant by the "nature of an oath," yet, when the questions were put by the trial judge in language that a child could understand, we think that it is apparent that he did understand what it meant to take an oath and to testify in the case. The court propounded these questions to the witness: "Dan, why did you put your hand on the book this morning and the lawyers over there say something to you, what was the purpose of it? A. To tell the truth. Q. Do what? A. To tell the truth. Q. Did you understand when you did that that you were doing that for the purpose of telling the truth? A. Yes sir." We are of the opinion that the test in such cases as the present is, that before a child of tender years can become a witness he must comprehend the nature of an oath; and we are also aware that no conviction can be legally had except upon the evidence of a competent witness or witnesses. Primarily the trial judge has a wide discretion in cases of this sort; and it has been repeatedly ruled by this court that unless the trial court manifestly abuses such discretion, his judgment will not be reversed. We are of the opinion that the trial judge did not so abuse his discretion in the instant case.

In *Minton* v. *State,* 99 *Ga.* 254 (25 S. E. 626), this court held: "Although a child eight years old, on a preliminary examination had for the purpose of testing his competency as a witness, stated that he did not know what an oath was, yet where he also stated that he knew what it was 'to go up in the court-house and swear you have to tell the truth,' that the law would punish him if he told a story, and that he was bound to tell the truth when sworn, and the examination as a whole disclosed such a degree of intelligence and knowledge on the child's part as to satisfy the judge of his competency, this court will not reverse a ruling permitting

the child to be examined as a witness concerning the facts in issue." In *Frasier* v. *State*, 143 *Ga.* 322 (3) (85 S. E. 124), it was held: "The court must, by examination, decide upon the capacity of one offered as a witness, and objected to as incompetent on account of childhood, so far as to determine whether the witness shall be allowed to testify. His determination of this preliminary question will not be reversed, unless plainly erroneous. Civil Code, §§ 5865, 5866; *Young* v. *State*, 125 *Ga.* 584 (54 S. E. 82); *Richardson* v. *State*, 141 *Ga.* 782 (82 S. E. 134)."

In *Holden* v. *State*, 144 *Ga.* 338 (2) (87 S. E. 27), it was held: "It is left to the sound discretion of the trial court to determine whether or not a child of tender years is a competent witness; and where the court examines a child as to its understanding of the nature of an oath and decides that it is competent to testify, this court will not interfere, where it does not appear that such discretion has been manifestly abused. Civil Code, §§ 5862, 5865; *Moore* v. *State*, 79 *Ga.* 498 (3), 502 (5 S. E. 51); *Beebee* v. *State*, 124 *Ga.* 775 (53 S. E. 99); *Young* v. *State*, 125 *Ga.* 584 (4), 586 (54 S. E. 82). It does not appear that the judge manifestly abused his discretion in permitting a child of tender years to testify in this case, after an examination before the court as to the child's competency. *Richardson* v. *State*, 141 *Ga.* 782 (82 S. E. 134)." And see *Harris* v. *State*, 152 *Ga.* 193 (7) (108 S. E. 777).

Complaint is made of the charge of the court to the jury, as set out above. We are of the opinion that while the charge complained of is not accurate, it is not cause for reversal in this case, for the reason that it is more favorable to the defendant than he was entitled to have. The competency of a witness is for the court, and not for the jury; the credibility of the witness is for the jury, and the trial court instructed them that under the rule which he had given them in charge they might disregard the testimony of the witness altogether, if they reached the conclusion that the witness was incompetent. The court had ruled that the witness was competent, and the jury would not be authorized to disregard his testimony altogether, upon their conclusion as to the competency of the witness; and therefore the charge was more favorable to the accused than he was entitled to have.

The court did not err in failing to instruct the jury to disregard the evidence of the witness entirely, and not to consider it.

2. The fourth and fifth grounds of the motion for new trial complain of the rulings of the court in excluding certain evidence offered in behalf of the defendant in support of his contention that his wife, and not himself, shot the deceased. Olin Hughes, a witness sworn in behalf of the State, testified that he was in the field plowing at the time of the homicide, about a quarter of a mile from the place where it occurred; that immediately upon hearing the shot he drove to the end of the row, took out his horse, and rode him in a walk to the scene of the homicide; that there was no one present at the scene of the homicide except the defendant, his wife, and Mrs. Stringer, the mother of the deceased. The witness was being cross-examined by counsel for the accused, and was asked " When you got there Mrs. Reece told you she shot him, didn't she? Mr. Wood: I object to that. Court: I will exclude that." It is insisted that the ruling of the court in excluding the question and refusing to permit the witness to answer the question propounded was erroneous and harmful to the movant, for the reason that it was relevant and applicable to the defendant's defense, and that it was a part of the res gestæ, etc. Exception is also taken in the fifth ground of the motion, because the court excluded the answers of the witness J. S. Shinall, who had testified that there were about two acres of woods between his house and the house of the defendant; that at the time the shot was fired which killed the deceased, the witness was over in the field about a half a mile from the scene of the homicide; that he took the mule out and went by home, changed his pants and shoes, and then went to the home of the defendant; that about a half hour intervened between the time he heard the shot and the time he got to the defendant's house, the scene of the homicide. The witness was asked by the defendant's counsel the following question: " I will get you to state whether or not when you got there Mr. Reece's wife said she shot him [the deceased]." The question was objected to on the grounds, (1) that the defendant's counsel was seeking the testimony of a man's wife; and (2) that it was leading. The defendant's counsel stated that he wanted to ask if Mrs. Reece did not admit, or tell the witness immediately when he went up there, that she did

the killing. The court declined to let the witness answer the question.

The general rule is that husband and wife shall not be competent or compellable to give evidence in any criminal proceeding for or against each other. Penal Code (1910), § 1037. *Marcus* v. *State,* 149 *Ga.* 209 (7) (99 S. E. 614), was where the lower court had permitted a witness for the State to testify that " she [defendant's wife] was begging Grant [the defendant] not to shoot." The witness testified that immediately before the defendant shot the deceased the defendant's wife was begging him not to shoot. This court held that this evidence was not inadmissible on the ground that the wife was not competent to testify for or against her husband in the case; citing a number of authorities, among others State *v.* Lasecki, 90 Ohio St. 10 (106 N. E. 660, Ann. Cas. 1916C, 1182, L. R. A. 1915E, 202, 204, and note, and the numerous cases there cited in support of the rule that " res gestæ declarations of husband and wife are admissible for or against each other, although each may be incompetent to testify as a witness in the case)." And see *Swain* v. *State,* 149 *Ga.* 629 (101 S. E. 539). The evidence is not, therefore, inadmissible because it permits the wife to testify in favor of her husband. But is it part of the res gestæ? Our Penal Code (1910), § 1024, defines res gestæ to be " declarations accompanying an act, or so nearly connected therewith in time, as to be free from all suspicion of device or afterthought," and declares that such declarations are admissible in evidence as a part of the res gestæ. While the foregoing evidence was not objectionable on the ground that it was permitting the wife to testify for the husband, it could only be admitted on the ground that it was part of the res gestæ. The evidence was not of that spontaneous character, and so nearly connected in point of time with the main event, as to render it admissible as part of the res gestæ; nor does it appear to have been entirely free from the suspicion of device or afterthought. *Robison* v. *State,* 114 *Ga.* 445, 447 (39 S. E. 253) ; and see Underhill on Crim. Ev. (2d ed.) 174.

3. The sixth ground of the motion for new trial complains of the ruling of the court in admitting the evidence of the witness Olin Hughes, to the effect that when he got to the place where the homicide was committed, and while the deceased was lying in the

road leading from the defendant's barn to the big road, the defendant led his mules up close to the body of the deceased, and stopped; that what caused him to stop was Mrs. Stringer, the mother of the deceased, who asked the defendant "not to lead the mules over Guy, the deceased." This evidence was objected to on the ground that it shed no light on the issue, and that it was irrelevant, immaterial, and incompetent. We are of the opinion that the court did not err, as against this objection, in admitting the evidence. The saying of Mrs. Stringer was not objected to on the ground that it was hearsay. One element of murder is malice. Malice may be implied where no considerable provocation appears, but where all the circumstances of the killing show an abandoned and malignant heart. Penal Code (1910), § 62. The attempt to lead the mules over the dead body of the deceased was one of the circumstances of the killing; and we are of the opinion that it was admissible as throwing light upon the transaction, and as showing the state of the defendant's mind at the time.

4. The seventh ground of the motion complains of the ruling of the court in admitting the evidence of Olin Hughes, a witness sworn in behalf of the State, who had testified that the defendant led his mules up close to the body of the deceased, Guy Stringer, and stopped, and that what caused him to stop was Mrs. Stringer, the mother of the deceased, who asked him not to lead them over Guy, the deceased. On cross-examination by counsel for the defendant, the following took place: Q. "Don't you know the defendant had gotten the mules out and sent Oscar Price and Andy Holloway after his brother and father?" A. "Mr. Holloway wasn't there." Q. "Didn't he bring them out there and send after his brother and father?" A. "The only thing I know — he never said anything about Holloway, but he called to Oscar Price — " Mr. Wood: "I object to what he said." Mr. Morris: "He asked what else he said, and I want to ask now that at the time he was talking about, if he didn't call Oscar Price and ask him to go after his brother, in the same conversation he was talking about." Court: "What conversation do you refer to?" Mr. Morris: "When he led the mules by and was holding them, and he asked what else was said, at the same time he was asked about, I want to show by this witness he called to Oscar Price." Court: "I will let him testify to anything that took

place between him and Mrs. Stringer." It is insisted that this ruling of the court excluding the evidence from the consideration of the jury was erroneous and harmful to the movant. We are of the opinion that the court did not err in the ruling complained of. He permitted counsel for the defendant to show any conversation occurring between the defendant and Mrs. Stringer, in order to bring out the entire conversation; and this ruling was not error for any reason assigned.

5. It is insisted that the evidence is not sufficient to authorize the verdict. The evidence was conflicting. Dan Stringer, the young son of the deceased, testified that at the time the defendant shot and killed his father he was an eye witness to the transaction, and that his father was shot while sitting down, with no weapon, and had none about him; that he had only a switch in his hand, and that he did not attempt to use that in any way. The evidence for the defendant tended to show that the deceased was shot and killed by the wife of the defendant, who was being assaulted with a rock in the hands of the deceased, and that she fired at the deceased and killed him with a shotgun in self-defense. There was much corroborating evidence both for the State and the accused. Whether the defendant killed the deceased, or whether some one else did it, was an issue of fact for the jury to try. Obviously they believed the witnesses for the State, and we can not say that their verdict is not supported by the evidence. The trial judge being satisfied with the verdict, and no error of law appearing as having been committed on the trial of the case, the judgment of the trial court refusing the motion for new trial will be affirmed.

*Judgment affirmed. All the Justices concur.*

ATKINSON and HINES, JJ. We concur specially in the ruling made in the third division of the opinion. If objection had been made to the declaration of the mother of the deceased that it was hearsay, such objection should have been sustained.