## BELL *v.* THE STATE.

1. In overruling, after examination, an objection to a witness on the ground that he was an infant and incompetent to testify, the court necessarily ruled that the witness was competent, and properly submitted to the jury the credit to be given to his testimony. Although in overruling the objection the judge said that "the jury passes on all of that," the charge immediately thereafter, that it was for the jury to pass upon the credit they would give to the testimony of this witness, rendered untenable the construction that the court left to the jury the determination of his competency. If the court had submitted to the jury the competency of this witness, such charge would have been more favorable to the accused on trial than he was entitled to.

2. It is within the discretion of the trial judge to determine whether or not a boy of nine years is competent as a witness; and where the judge examines such boy as to his understanding of the nature of an oath, and decides that he is competent to testify, a new trial will not be granted unless it appears that the discretion of the judge has been abused. The testimony of the child witness here in question, including his frank admissions of ignorance, was intelligent, lucid, consistent, and to the point; and it could be considered by the trial judge in determining as to his competency. The judge's discretion was not abused in holding the witness competent.

3. The admission or exclusion of testimony as to experiments must rest largely in the discretion of the trial judge, and the exercise of this discretion will not be controlled unless abused. The weight of such testimony is for the jury, and varies according to the circumstances of similarity that they may find to exist between the experiments as made and the actual occurrence under investigation. As it does not appear that the experiments here in question (relating to pistol shots) were made under circumstances different from those attending the occurrence under investigations, and as such evidence tends rather to support than to refute the testimony offered by the defendant, the admission of the testimony does not require a new trial.

4. The verdict is supported by the evidence.

No. 5813. MAY 13, 1927.

Murder. Before Judge Howard. Fulton superior court. October 23, 1926.

James Jones was offered as a witness for the State. On objection by defendant as to his competency, he was examined on oath, and testified as follows: I am nine years old. I do not go to school. I have been to school. I do not know how long I have

Criminal Law, 16 C. J. p. 563, n. 30, 33, 34, 36, 37, 38, 39; p. 926, n. 62; p. 929, n. 86; p. 930, n. 93; p. 965, n. 67; p. 1146, n. 53; 17 C. J. p. 240, n. 33; p. 241, n. 44, 45; p. 317, n. 10; p. 358, n. 52; p. 361, n. 91.

Witnesses, 40 Cyc. p. 2200, n. 57; p. 2201, n. 59; p. 2242, n. 80; p. 2243, n. 82, 83, 85 New.

been out of school. I have been to court once before, at the police station in Atlanta. I was a witness in a case. I do not know what court I was in. The case was one of a man running over a man. I held up my hand like this (indicating), when I came in here. I do not know what it means to have any one tell me, "The evidence in this case shall be the truth, the whole truth, and nothing but the truth, so help me God." I do not know what an oath is. I know what would happen to me if I just told anything I wanted to. They would send me to the reformatory. I have never heard anything about the devil, or God, or anything of that sort. That man right yonder was telling me about taking me to the reformatory. He was going to take me there if I didn't tell the truth. He told me to tell the truth about it. I do not know what the truth is. I have never heard of the truth before. This man talked to me last Friday, here in the court-house. They wrote down what I said. Oscar Jackson was with me. I did not sign my name. I made a cross-mark on a piece of paper. I touched a pen or pencil. These other boys were there when I was making the statement. I told what I had seen. I saw just what they saw. I waited for the others to make their statement, and then I made my statement. I stated what they said was all right. I did not know what was on the paper when I touched the pen.—The court asked the witness what he came there to tell. He made no answer. When questioned by the solicitor-general, he made these statements: I came here to tell the truth. I have not told anybody anything but the truth about this case. The man that I made the statement to was a gentleman by the name of Jones. He wore glasses. In answer to questions propounded by the court, the witness made these statements: I know what they would do with me if I told something I didn't see out there. I know what the court would do if I told something I didn't hear or see out there. I know whether I would be punished if I told something I didn't see or hear.

At the conclusion of the examination of the witness, counsel for the defendant objected to his being permitted to testify, on the ground that he was incompetent, that the examination showed him to be a nine-year-old boy, who had never heard of God or the devil, that he did not know anything about the sanctity of an oath, and that he was thoroughly unqualified as a witness. The

court overruled the objection, and permitted the witness to testify as follows: "On Friday night me and a boy named Rufus Banta and Oscar Jackson were walking down Mitchell street, coming from the terminal station, coming home. We got down by the rock pile, and a Ford drove up. It was an open car. He stepped out and went to shooting. Golden Bell stepped out. Yonder is Golden Bell. He stepped out and went to shooting. The first shot, that little boy Rufus Banta fell over a wire, and we thought he was shot. We turned around the other way and started to run. At the first shot I seen him backing back. He backed back and caught his heart like this. The third shot he caught his heart and ran by Rufus Banta. The man that got shot caught his heart like this, and ran by Rufus Banta, and Rufus ran down and told me to run down and see what was the matter. The man that got shot ran down in front of that place. I don't know what the name of that place is, but he ran on down and fell. I was the first one that got there. I was the first one there. There were five colored men and one lady there. That lady thought it was her brother. She took her hand and pulled him over on his back." The error assigned is that the court erred in permitting this witness to testify, as his examination showed that he had no conception of the sanctity of an oath, that he did not know what an oath was, or what the truth was, and that he was therefore thoroughly incompetent to testify in the case.

The other assignments of error sufficiently appear from the opinion.

*Branch & Howard* and *E. L. Tiller,* for plaintiff in error.

*George M. Napier, attorney-general, John A. Boykin, solicitor-general, T. R. Gress, assistant attorney-general, J. W. LeCraw,* and *E. A. Stephens,* contra.

HINES, J. 1. James Jones, a boy nine years of age, was offered as a witness for the State. Counsel for the defendant objected to this witness being permitted to testify, on the ground that he was incompetent, because of his infancy. After the witness had been examined as to his competency, the court overruled the objection to his being allowed to testify, and in overruling the objection stated that "the jury passes on all of that," and then addressed the jury as follows: "You have heard the witness examined. He was examined in your presence, in order that you

might observe his manner and hear his statement. It is for you to pass on the question of the credit you will give his testimony, whether he understands the nature and consequences of his testimony." To this proceeding the defendant excepted upon the ground that it was the duty of the court to pass upon the competency of this witness, and that the court erred in submitting to the jury the question whether or not the witness was competent. The competency of a witness must be decided by the court, and the court must, by examination, pass upon the capacity of a witness alleged to be incompetent from childhood. Civil Code (1910), §§ 5856, 5865; *Moore* v. *State,* 79 *Ga.* 498 (5 S. E. 51); *Hicks* v. *State,* 105 *Ga.* 627 (31 S. E. 579); *Reece* v. *State,* 155 *Ga.* 350 (116 S. E. 631). It is generally error for the court to submit to the jury the question of the competency of a witness. *Hicks* v. *State, Reece* v. *State,* supra. In overruling, after examination, the objection to the witness on the ground that he was incompetent to testify, the court necessarily held and ruled that the witness was competent, and properly submitted to the jury the credit to be given to his testimony. The court passes upon the competency of a witness, but the jury passes upon his credibility. *Hicks* v. *State,* supra; *Reece* v. *State,* supra. While the language, "the jury passes on all of that," used by the court after overruling the objection to the competency of the witness, standing alone, might be susceptible of the construction that the court left to the jury the determination of the competency of this witness, the charge of the court, in immediate connection with the use of such language, that it was for the jury to pass upon the credit which they would give to his testimony, renders that construction untenable. But if the court had submitted to the jury the competency of this witness, such charge would have been more favorable to the defendant than he was entitled to, and it furnishes no ground for the grant of a new trial. *Reece* v. *State,* supra.

2. Children who do not understand the nature of an oath are incompetent witnesses; but it is left to the sound discretion of the trial judge to determine whether or not a boy nine years of age is a competent witness, and where the court examines a boy of that age as to his understanding of the nature of an oath, and decides that he is competent to testify, this court will not grant a new trial where it does not appear that the discretion of the court

has been manifestly abused, which does not appear in this case. The competency of a child must, from its very nature, be left almost exclusively to the judge of the trial court. *Peterson* v. *State,* 47 *Ga.* 524. In *Minton* v. *State,* 99 *Ga.* 254 (25 S. E. 626), a child eight years old, who, on a preliminary examination had for the purpose of testing his competency as a witness, stated that he did not know what an oath was, was held competent. In *Young* v. *State,* 125 *Ga.* 584 ·(54 S. E. 82), a child twelve years of age, who on such examination testified that he did not know the nature of an oath, that he did not know what it was to take the Bible in his hands and swear in the case, and did not know ·what the sanctity of an oath was, was permitted to testify. In the present case the evidence of this child in the record, including his frank admissions of ignorance, was intelligent, lucid, consistent, and to the point; and it could be considered by the lower court in determining his competency as a witness. *Moore* v. *State,* supra. Under these decisions, the trial judge did not abuse his discretion in holding this witness competent, although the witness testified that he did not know what an oath was, nor what the truth was, and that he had never heard anything about the devil or God, or anything of that kind. *Reece* v. *State,* supra.

3. One Parks, a witness in behalf of the defendant, had testified that on the night of the shooting he was at his place of business at 52 Elliott street, approximately 75 to 100 feet from the point at which the shooting occurred; that he heard four shots; that one shot was fired, and then, after an interval, three more shots were fired in rapid succession. In an attempt to rebut this testimony, one Dabney, a witness for the State, was permitted to testify that he stationed himself at Parks' place of business; that a pistol similar to that with which the deceased was killed, and loaded with the same cartridges, was fired five times at the point where the homicide was committed; that he heard a number of reports that sounded as though they were at quite a distance and seemed rather dim and muffled to him; that when asked by Baker, "Were those shots?" he replied that they were. Baker, a witness for the State, and the one referred to in the above testimony of Dabney, was permitted to testify that he was at Parks' place at the time referred to by Dabney; that he knew some shots were going to be fired; that he was waiting to hear them, and that he

heard them, but the sound was muffled. To this testimony the defendant objected, upon the ground that it was irrelevant and immaterial; that whether the test was a fair one would depend upon the surrounding conditions, whether the atmospheric and other conditions were the same on the two nights in question, and whether the same kind of weapon and powder were used on the two occasions. The court overruled these objections and permitted the witness to testify as above. To this ruling the defendant excepted. Evidence of experiments made under similar conditions and directly illustrating a material issue in the case may be given; but if the experiments were made under different conditions, or under such circumstances that they might be worthless or misleading, the evidence should be rejected. *Hicks* v. *State*, 146 *Ga.* 221 (91 S. E. 57). The admission of testimony as to experiments must largely rest in the discretion of the trial judge; and the exercise of this discretion will not be controlled unless manifestly abused. The weight to be attached to such testimony is for the jury, and varies according to the circumstances of similarity that the jury may find to exist between the experiments made and the actual occurrence whose facts are under investigation. *Augusta Railway &c. Co.* v. *Arthur*, 3 *Ga. App.* 513 (60 S. E. 213). As it does not appear that the experiments were made under circumstances different from those surrounding the occurrence under investigation, and as such evidence tends rather to support .than to refute the testimony offered by the defendant, the admission of such experimental evidence does not require the grant of a new trial.

4. The verdict is supported by the evidence.

*Judgment affirmed.  All the Justices concur.*