### 21466. DUKE *v.* THE STATE.

DECIDED JUNE 10, 1931.

*Porter & Mebane,* for plaintiff in error.

*M. Neil Andrews, solicitor-general, Dean Owens,* contra.

LUKE, J. The indictment in this case charges that William

Duke, alias Bubber Duke, did on January 7, 1931, in Floyd county, buy and receive from Edward Lackey and Jessie Heads certain ladies' silk hose and men's shirts, of the value of $125, "the same having been feloniously stolen by the said Edward Lackey and Jessie Heads, the principal thieves, the said Edward Lackey and Jessie Heads having plead guilty to the offense of burglary of the goods from the place of business of the said Rome Manufacturing Company, the said accused knowing said goods to have been stolen at the time said accused did buy and receive the same." A jury found the defendant guilty, fixed his term at one year, and recommended that he be punished as for a misdemeanor. The exception here is to the overruling of his motion for a new trial.

It clearly appears from the brief of evidence that on January 7, 1931, some person or persons raised a window of the place of business of the Rome Manufacturing Company, entered the building, and stole therefrom a large portion of the articles set out in the indictment, and that said company recovered $125 worth of the stolen goods. C. E. Warren testified, in substance, that he was a police officer of the City of Rome; that about two days after the theft a person told him the stolen goods were on West Sixth street; that witness went to defendant's place at Five Points, but did not find any of the stolen property there; that witness found the defendant at an old vacant barbecue stand that had been a pressing club, and asked him about the "stuff;" and that witness then told defendant that he knew that the "stuff" was stolen, and that he had information that it was in defendant's possession. The witness then swore as follows: "He (the defendant) stood there a minute, and said: 'Well, I hauled that stuff. . . I drove down to the trestle down here on East First street, and put the boys out with the stuff. . . I know where it is. If you want me to, I will go and get it for you, if you will wait here. . . I rather you all wouldn't go down there.'" Warren further testified that the defendant went with him in his car and directed witness to drive to the first house beyond Five Points; that the defendant said "Stop right here," and walked up the hill, "kinder looking around;" that the defendant went up the hill and disappeared; and that in an hour or two two boys came in the police station, and said: "Here is that stuff." G. C. Williams testified, in substance, that late in the afternoon of the day the defendant disappeared, Seab Goodley

came to the police station with the stolen goods. This witness further swore that he subsequently talked with the defendant, and that the defendant made the statement that he sent the stuff back by Seab Goodley; and that Jess Head and Edward Lackey "plead guilty to burglarizing the Rome Manufacturing Company's place of business."

The gist of the defendant's statement to the jury follows: "Edward Lackey and Jess Head . . asked me would I make a trip for them, . . said they wanted me to carry them over to the fourth ward on West Sixth street; and they got in the car and I carried them over there, . . and they got out and said, 'Wait a minute, we are going back to North Rome;' and they went in the house and got a croker sack and put it in the car; and they set behind, and I was setting in front driving, and I said: 'Where are you going?' and they said: 'Back to North Rome.' . . I turned around at the Southern Trestle, where the trestle crosses East First street, and they got out, and I said: 'What have you got in the sack?' And they said they had some stuff, and I didn't know whether they had whisky or not, and they got out and went down that river. And so, the next evening, I think it was, Mr. Warren came up and said he wanted to get that package; and I said: 'What package? I haven't got no package.' And he said: 'Yes, you have; I am talking about that package that Jessie Head and Edward Lackey had.' And I said: 'Yes, sir, I know where that is; it's down under the trestle.' . . I thought he was going to arrest me, and I got out of the way. And I seen Mr. Seab Goodley, and sent him down there on the river bank where the boys had put the stuff, and he got it and went back down there to the police station with it. So far as me knowing anything about any stolen stuff, I don't know anything about it; but those boys got out and said they had some stuff, and they went down towards the river, and I saw where they hid the package down there." W. H. Warren, recalled for the State, testified that the place where the defendant took him to get the stolen goods was a quarter of a mile from the place where the defendant had said the other two negroes carried them.

Special ground 2 of the motion for a new trial complains that the court expressed an opinion as to what had been proved, in the following charge: "In this case, under the law applicable and

the evidence in this case, there is only one question for determination by the jury; that is, as to whether or not the defendant in this case had knowledge that the goods were stolen or feloniously taken at the time he received them; because, under the testimony in this case and his statement, he did receive the goods; and the only question, as stated, being as to whether or not at the time that he had knowledge that they had been stolen or feloniously taken." The general rule in such cases was well stated by Judge Russell in the case of *Southern Express Co.* v. *State,* 1 *Ga. App.* 700 (5) (58 S. E. 67), in this language: "To assume in a criminal case that the testimony for the State is the truth, though such testimony be not contradicted by evidence for the defendant, and to charge the jury that such testimony is the truth and that there is no contention to the contrary, is violative of section 4334 of the Civil Code, and demands a new trial. The plea of not guilty, filed by the defendant, is a contention on his part as to every material and essential fact necessary to establish his guilt, and implies a denial of every such fact." In the decision the learned judge states that the plea of not guilty submits to the jury "not only the facts testified to by witnesses, but also the credibility of each and every witness." Another and perhaps more complete statement of the same rule appears in this language in *Cooper* v. *State,* 2 *Ga. App.* 730 (59 S. E. 20): "A plea of not guilty, by one accused of a crime, is an express contention on his part antagonistic to every fact necessary to be proved by the State in order to establish his guilt; and unless the accused admits one or more of the facts which it devolves upon the State to prove, such fact must be established by evidence. To assume that an important fact in the case on trial has been admitted, and to so instruct the jury when no such admission has been made, is reversible error." We next quote from *Ryder* v. *State,* 100 *Ga.* 528 (9) (28 S. E. 246, 38 L. R. A. 721, 62 Am. St. R. 334): "The court in some of its instructions referred to the homicide as 'the act which the accused had committed' and thus at least intimated an opinion that the killing was done by him; and although many of the requests to charge practically conceded that this was true, yet as it was not distinctly admitted that the accused did commit the homicide, expressions embracing such language as that above quoted should not have been used." While the instructions referred to were not held to be reversible error, for the reason that counsel

misled the court by making said requests to charge, the writer of that opinion said: "Of course, if the requests . . had been given, there would be no question. . . However, in cases where the accused does not expressly admit that he committed the act, it is not good practice for the judge to use such expressions as those above quoted." In the majority opinion in the case of *Young* v. *State,* 125 *Ga.* 584, 588 (54 S. E. 82), it was said: "It was alleged, in the indictment, that the deceased was 'murdered' by the use of a 'gun.' These were, material and essential averments in the indictment. The defendant's plea of not guilty put both of them in issue. Being placed in issue, there was no way to avoid the issue, except by withdrawal by the defendant personally, or by his counsel for him. There was no such withdrawal; and the court in so instructing the jury as to withdraw from them the determination of those issues committed error. The court may have been of the opinion that the evidence in the case was overwhelmingly against the defendant on these issues, but such would not have authorized him to withdraw the issues from consideration of the jury. If the court could withdraw these issues, there is no principle which would prevent the withdrawal of any other issue in the case. It may as well be said that all issues may be withdrawn, and that where the court thought the evidence demanded a conviction of the defendant, the court could direct a verdict of guilty. It would hardly be contended that this could be done in any criminal case, in the absence of a statute. Certainly it could not be done in a felony case, with or without a statute." We are not aware that either the *Ryder* or the *Young* case has ever been overruled; and these cases support the general rule applicable to criminal cases as stated by Judge Russell in *Cooper* v. *State,* supra. Of course the Penal Code (1910), § 1058, in most direct language forbids the court to express or intimate to the jury his opinion as to what has or has not been proved in a criminal case. Our observation is that in most of the cases in which it has been held that the trial judge did not commit reversible error in expressing the opinion in his charge that a material fact necessary to make out the State's case had been proved, the defendant had in some way admitted such fact.

Under the foregoing authorities, we think that the court erred in charging the jury that under the testimony in the case and the

defendant's statement, the defendant did receive the goods, and that the only question for the jury to consider was whether or not the defendant knew that the goods had been stolen or feloniously taken.

The other special grounds of the motion for a new trial disclose no reversible error and present no question that is new or interesting. Of course, we do not pass upon the general grounds of the motion for a new trial.

*Judgment reversed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*