## Ellison v. The State.

Jenkins, Presiding Justice. 1. The undisputed testimony, which was also in effect admitted by the defendant in his statement to the jury, showed that the deceased woman with whom he had been living illicitly had been beaten by him with a tree limb and kicked or stamped to death; and that he had dragged her and pulled out much of her hair during repeated attacks for about two miles along a country road, because he had become enraged at her request to buy groceries. The only material contentions by the defendant in his statement were that "she hit me and I hit her, we fought all over the place;" and that he "didn't intend to kill her." Testimony by the son of the deceased, the only eyewitness, that the deceased had tried to fight the defendant during his attack, "but she couldn't," was corroborated by testimony of the sheriff, who saw the defendant on the same day, after the homicide, that there was no bruise, mark, scar, or cut on him. Accordingly, on the general grounds, the verdict of murder without a recommendation was fully authorized, and there is no merit in the special grounds or contentions that no malice or murderous intent was shown; that the evidence at most authorized a conviction of voluntary or involuntary manslaughter; and that the court erred in refusing to charge "the law relative to accident." As to malice and the existence of murder, even without a specific intention to kill, under circumstances such as were here shown, see *Gallery* v. *State*, 92 *Ga.* 463 (2) (17 S. E. 863); *McMillan* v. *State*, 35 *Ga.* 55, 59; Code, §§ 26-1003, 26-1004.

2. The court did not err in the exercise of its discretion, after a preliminary examination as to competency, in admitting the testimony of the eleven-year old son of the deceased, where such examination disclosed sufficient intelligence to testify as well as an understanding of the nature of an oath. *Johnson* v. *State*, 61 *Ga.* 36; *Style* v. *State*, 175 *Ga.* 95 (165 S. E. 7); *Bell* v. *State*, 164 *Ga.* 292 (2) (138 S. E. 238); *Moore* v. *State*, 79 *Ga.* 498 (3) (5 S. E. 51); *Holden* v. *State*, 144 *Ga.* 338 (2) (87 S. E. 27), and cit.; Code, § 38-1610. Since the question of *competency* was one of law for the judge to determine, he did not err in failing to charge the jury relative to that question. *Reece* v. *State*, 155 *Ga.* 350 (1-b) (116 S. E. 631); *Moore* v. *State*, supra. No question is raised as to whether the judge should have charged on the *credibility* of the witness by reason of his age.

3. Where a new trial is sought on the ground of newly discovered evidence from witnesses, "affidavits as to their residence, associates, means of knowledge, character, and credibility must be adduced." Code, § 70-205. This requirement as to naming "associates" in supporting affidavits is not met by a mere statement that the witnesses "run with and associate with all the best people in [the] county of their color," without naming any such associate, since, under the ruling in *Ivey* v. *State*, 154 *Ga.* 63 (6) (113 S. E. 175), the affidavit in support of the witness "must give the names of his associates," and "a statement that he keeps good company" is not sufficient to meet the statutory requirement. See *Anderson* v. *State*, 190 *Ga.* 455 (5) (9 S. E. 2d, 642), and cit.

(*a*) The judge did not abuse his discretion for the additional reasons that the alleged newly discovered evidence as to insanity was limited to statements that the defendant, at uncertain times before the homicide, had "acute spells of anger or mad fits which would last a half a day at a time," but was "humble" and "law-abiding" at other times, and merely that he was "not of sound memory and discretion," without any statement as to his inability to distinguish between right and wrong, or as to any delusional insanity; and this evidence was met by a counter-showing of the State that he was of average intelligence and capable of distinguishing right from wrong.

4. The fact that one of the witnesses for the State made an unsworn written statement that "under all the circumstances I have learned since conviction of [the defendant], I recommend him for mercy in form of life imprisonment," does not conform to the rules authorizing a new trial on newly discovered evidence, and is not otherwise relevant as a basis for a new trial.

The same rule applies to the signed written statements by eleven of the trial jurors, that they now recommend mercy by life imprisonment, because after the conviction of the defendant it "had been brought to [their] attention that there were mitigating circumstances . . due to the infancy" of the son of the deceased, who testified as a witness, "and the condition of the defendant's mind, which were not brought out at the trial." Such a statement affords no evidence of insanity either at the time of the homicide or at the present time, and amounts to nothing more than a *recommendation*, which would be relevant only before a pardoning or commuting authority. See *Corbitt* v. *State*, 7 *Ga. App.* 13 (66 S. E. 152).

*Judgment affirmed. · All the Justices concur.*

No. 14735. NOVEMBER 30, 1943.

*E. M. Price,* for plaintiff in error.   *T. Grady Head, attorney-general, George Hains, solicitor-general,* and *Maud Saunders, contra.*