(42 South. 960.)

No. 16,366.

STATE v. BROWN.

(Jan. 7, 1907. Rehearing Denied Feb. 4, 1907.)

1. GRAND JURY—MEMBER OF PANEL.

The mere drawing of the name of a juror on the list of grand jurors does not constitute him a member of the panel when he is not

present in court at the time and did not answer before the grand jury was duly impaneled and sworn.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Grand Jury, §§ 56–58.]

2. SAME—QUASHING VENIRE.

The mere fact that an incompetent person has been selected and summoned as a grand juror furnishes no ground for quashing the venire.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Grand Jury, § 43.]

3. SAME—SETTING ASIDE INCOMPETENT.

It is the duty of the trial judge to set aside an incompetent person selected and summoned to serve as a grand juror.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Grand Jury, §§ 28, 29.]

4. JURY—EXCUSING MEMBERS.

In the absence of proof of fraud or wrong, the accused has no right to complain of the action of the judge in excusing jurors for sickness or other causes. Where the cause is not expressed. a sufficient cause will be presumed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Grand Jury, §§ 28, 29.]

5. CRIMINAL LAW—SERVING LIST OF JURY.

Where a list of the trial venire has been served on the accused, a trifling clerical error in the spelling of the name of one juror will not suffice to set aside the service.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 1442.]

6. SAME—REMARKS OF PROSECUTING ATTORNEY.

A comment of the district attorney in the course of his argument before the jury that it was unfortunate for the state that the wife of the accused could not testify is within the bounds of legitimate comment, when warranted by the evidence from the standpoint of the prosecution. and, moreover, cannot be presumed to have worked any actual prejudice.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 1670, 1673.]

7. WITNESSES—CROSS-EXAMINATION.

A witness for the defense may be cross-examined on all matters brought out in his direct examination, and it is no objection that his answers may affect his credibility and character.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 931–948.]

(Syllabus by the Court.)

Appeal from Twenty-Seventh Judicial District Court, Parish of Assumption; Paul Lèche, Judge.

Robert Brown, alias Coco, was convicted of murder, and appeals. Affirmed.

[1] 117 La. 1040.

Marks & Wortham and Lawrence Hamilton Pugh, for appellant. Walter Guion, Atty. Gen., and Gustavus Adolphus Gondran, Dist. Atty. (Lewis Guion, of counsel), for the State.

LAND, J. The defendant was indicted for murder, and was tried and found guilty as charged. From a death sentence pursuant to the verdict, defendant has appealed.

Defendant moved to quash the indictment on the following grounds:

(1) That the jury commissioners selected as one of the 20 members to compose the venire for the grand jury a minor, whose name was stricken from the list by order of the court, leaving only 19 qualified grand jurors.

(2) That, when the grand jury was drawn on the first day of the term, one Burbank of the venire did not answer when his name was called, and thereupon a capias issued for him, but prior to the return thereon the sheriff drew the name of Burbank from the box, and, he not being present, another grand juror was drawn and substituted, and later, on the same day, said Burbank reported, but was not sworn on the grand jury.

(3) That prior to the drawing of the grand jury the court excused 4 certain jurors, leaving only 14 of the original venire, one of whom was appointed foreman, and the panel completed by drawing from the remaining 13. The facts stated in the motion were admitted by the district attorney. The allegation that the facts stated constituted a fraud or wrong on the rights of the accused is a mere legal conclusion. It is not charged that either the jury commissioners or the judge acted from improper motives. The motion was argued, submitted, and overruled, and thereupon the defendant excepted. Neither the motion nor the bill state the reasons for excusing the four jurors. The minutes state that two of them were excused on account of sickness, and that two were excused temporarily, for reasons not assigned.

Article 117 of the Constitution provides for a grand jury of 12, 9 of whom must concur to find an indictment. We held in a recent case that 9 members of the grand jury could present an indictment. In other words, 9 members concurring constitute a working quorum.

Act No. 135, p. 216, of 1898, provides for the selection by the jury commissioners from the general venire list of the names of 20 citizens possessing the necessary qualifications to be subject to duty as grand jurors for the next ensuing six months. From this list the judge selects a suitable person to act as foreman, and then the sheriff draws names from the envelope containing the names of all the persons on the list "until eleven answer," who, with the foreman, constitute the grand jury. As an absent juror cannot answer, the mere drawing of his name does not place him on the panel. If the law had read that the first 11 names drawn should, with the foreman, constitute the grand jury, there would be some basis for the contention of the accused that the absent juror was made one of the panel by the mere drawing of his name. The lawmaker, however, provided against the contingency of absence by requiring, not only the drawing, but the answer of the juror.

That it is not only the right, but the duty, of the judge to dismiss an incompetent juror, is too well settled for discussion. Marr's Criminal Jurisprudence of Louisiana, § 305. It has never been held by any court that the mere fact that the name of an incompetent juror is on the list avoids the venire. The judge is vested with the discretion to excuse grand jurors for incompetency or other cause by section 1 of Act 135, p. 216, of 1898. In State v. Gee, 104 La. 247, 28 South. 879, this power was recognized as undoubted, and it was held that the accused had no right to complain because the judge

excused a grand juror for sickness. Such a power is inherent in the trial judge in order to exclude from the jury persons who are incompetent or unfit for service and it is in its very nature discretionary. Bishop says:

"Nor can the party ordinarily complain when the court excuses a grand juror in the exercise of its discretion." Crim. Prac. 1, § 853.

From the notes cited by Bishop it appears that this power has been questioned only in cases where grand jurors have been duly impaneled and sworn. Prior to this stage the accused is without right to require the selection of one juror rather than another, and, if he has been indicted by a competent grand jury, he has no lawful cause of complaint. The accused may also be said to have no interest in the question unless it should appear that some of the jurors selected and sworn were partial or prejudiced or incompetent. At the common law, which governs in this state in criminal cases, any person under prosecution for crime may challenge grand jurors individually or as a body. Bishop, Crim. Prac. § 876. The accused surely cannot complain that his friends or partisans were excused from service. Two of the jurors were excused for sickness, and two were temporarily excused for cause not stated. The bill does not state that the judge acted arbitrarily or without sufficient cause, and all the presumptions of law are to the contrary. The contention of the accused seems to have been that no legal grand jury could be drawn unless all 20 of the jurors selected were competent and present in open court, and that his chance of not being indicted was lessened by the judge's excusing four jurors. This argument is necessarily based on the predicate that the jurors excused were more favorable to the accused than the jurors who were sworn, or that the latter were prejudiced against him. There is nothing in the record to sustain the latter hypothesis or to show that the accused was prejudiced in any way by the action of the court. In State v. Aspara, 113 La. 948, 37 South. 883, the contention was made that it was mandatory; (1) that every name on the list should represent a duly qualified petit juror; and (2) that every juror should serve unless death or sickness intervened. This contention was overruled, because, among other reasons, it would deprive the judge of a necessary discretion in the matter of holding or excusing jurors.

See, also, State v. Junius Jones (this day handed down), 42 South. 967, ante, p. 369, and authorities therein cited.

The motion to quash was therefore properly overruled.

The accused moved for a continuance on the ground that a correct list of the venire had not been served on him, as one "Dupius" was on the copy, whilst "Dupuis" had been drawn and called. As our predecessors have said, we do not see how this trifling clerical error has prejudiced the accused. State v. Turner, 25 La. Ann. 574; State v. Rodrigues, 45 La. 1040, 13 South. 802; State v. Duperier, 115 La. 478, 39 South. 455.

In the course of his address to the jury the district attorney said:

"There is one person whose lips are sealed by the mandate of the law, who, if she could have testified, would have been placed on the stand by the state, but, unfortunately, being the wife of the accused, being lawfully married to him, sealed her lips and she could not testify for or against her husband."

The counsel for the accused excepted to the above remarks as prejudicial.

The wife was present at the time of the homicide, and the accused, after cursing her, fired a shot in her direction and wounded one May Francis. Immediately afterwards the accused killed Charles Francis. Assuming that the wife would have testified to the truth, the comment that it was unfortunate for the state that her lips were sealed by the law was warranted from the standpoint of the prosecution.

The remarks of the district attorney did

not transcend the bounds of legitimate argument, and were not calculated to prejudice the accused.

While May Francis, the concubine of the deceased, was on the stand as a witness for the prosecution, she was asked by counsel for the accused:

"If she did not keep a disreputable house where men and women were permitted to meet for illicit purposes, and, if Morgan Brown [a witness for the defendant] would swear that she was in the habit of permitting such things, would he be telling the truth?"

She replied that she did not keep such a house, nor could any one say that she permitted such things. She was also asked by counsel for the defense if she had not been living in open concubinage with other men besides the deceased, and among them Morgan Brown. She admitted that she had been so living with several men and among them Morgan Brown, but had left him about five years ago.

Morgan Brown, father of the accused, was then placed on the stand by the defense, and, over the objections of the state, was permitted to testify that May Francis had lived with him for 10 years, and while so living had kept a disreputable house. The witness Morgan Brown was consigned for cross-examination, and was asked by the state if he had raised any objection to the "bad things" done by this woman, May Francis, during the 10 years that she lived with him. The witness replied that these bad things were going on while he was "drunk." The foregoing is extracted from the statement of the district attorney, which was approved by the trial judge, who certifies that the objection urged in the bill was made to the evidence of the witness as stated above. The recital of the court must be accepted as correct. The objection to the question was properly overruled.

The accused had already proved the relations between the witness and May Francis,

and, the witness having testified as to her disreputable conduct while they were living together, the state had the right to cross-examine the witness on the same subject-matter and the question objected to was pertinent and relevant. Cross-examination is one of the modes of impeaching the credibility of a witness. The state did not offer to prove as an independent fact that the witness kept a concubine or was not a virtuous person. As a matter of fact, the witness himself had admitted on his direct examination that he had lived in open concubinage with May Francis for 10 years.

The last bill of exception was taken to the overruling of the motion for a new trial on the ground that the verdict was contrary to the law and the evidence. This bill presents nothing which this court can review.

Judgment affirmed.