# EICH *v*. THE STATE.

No. 7259.   November 15, 1929.

*Philip Wellner, Marvin G. Russell,* and *Len B. Guillebeau,* for plaintiff in error.

*George M. Napier, attorney-general, John A. Boykin, solicitor-general, T. R. Gress, assistant attorney-general,* and *E. A. Stephens,* contra.

BECK, P. J. Ernest Eich was convicted of the offense of murder, with recommendation to the mercy of the court, and he was sentenced to life imprisonment. In the indictment it is charged that he killed and murdered his wife, Elizabeth Eich, by shooting her with a pistol. The defendant filed his motion for a new trial containing the usual general grounds, and subsequently filed an amendment containing several special grounds. The court overruled the motion, and the defendant excepted.

■ It appears from the record that Eich and the deceased had not been married very long, but in the period of their married life there had been separations and reconciliations. For a short time prior to the date of the homicide the couple had been living at the home of the parents of the defendant, where other people rented rooms or boarded. The shooting which resulted in the death of Mrs. Eich occurred at that place, and several other people were in the house at the time, but there were no eye-witnesses to the shooting. Five or six shots were fired, but all the shooting was done with one pistol. Eich himself, after the shooting, was found with three wounds, one of which was serious. Mrs. Eich received two wounds and died almost immediately. It appears from the evidence that Eich came home at about 9 o'clock the night of the homicide. Mrs. Eich was sitting on the front porch of the house in which they lived. She had been away from home two or three days. Almost immediately there was an altercation between Eich and his wife, and they began scuffling or fighting on the porch, and then went into the bedroom, where the scuffling or fighting was continued. After a short while five or six shots were fired, and when certain persons entered the room the defendant was lying partly on the bed, wounded, and Mrs. Eich was lying on the floor, dying. She had been shot twice. Two bullets had entered the body, one near the left breast, which was probably the fatal wound, and the other across the back. A part of the defendant's statement and explanation of the shooting is as follows: "Mr. Enix, who has a room directly across the hall from my wife and myself, came across and said his wife was very

ill and would appreciate it if we would quiet down. I came and told Betty I would not argue any more with her. By that time I lay diagonally across my bed, with my feet hanging over the side and my head about the opposite side of the bed, and I picked up a paper and was reading the paper. I think I heard Betty go out of the room. Directly she came back. The next thing I knew I heard the crack of a pistol. It was fired. . . I raised up after the first bullet and saw my wife with the pistol and in her left hand; just as I raised up I seen her with the pistol, and she came down again, and the shot which was fired this time it must have glanced there and hit me here. I knew it was between life and death, either life or death. I raised up and grabbed the pistol. Just as I raised up one bullet hit me here. I got very sick. Things were getting black for me. I didn't know anything. . . I don't know whether I grabbed the gun or not, but I think I heard some more shots fired. I didn't know anything after this until up at the Grady Hospital and they told me my wife was dead." Eich remained in the hospital about a month. Portions of the State's evidence contained in the record will be quoted in connection with certain grounds of the motion for a new trial.

The first special ground of the motion is as follows: "The court erred in not charging the jury the law of voluntary manslaughter, as based upon the theory of mutual combat, or mutual intent to fight. In support of this assignment of error the movant makes especial reference to certain portions of the evidence which are here quoted. R. H. Christian, a witness for the State, testified in part as follows: "They then started scuffling out there, scuffling or having a fight on the porch, and then they went back into their room and they continued. I heard just noises; it was a lumbering or blundering noise." Janet Christian testified: "After they went in their room they kept on scuffling and fussing like in their room; that is the thing I heard. Then I didn't hear anything when we went out on the front porch, no more than the confusion in the room." D. J. Enix testified: "The first I knew of any trouble between the young couple, the husband and wife that night, was when I heard a commotion on the front porch. . . I heard them going down the hall. I did not pay much attention to what they were saying when they went back there. I know it was very boisterous. . . I did not hear her ask him to do anything. . . He

told her to dry up a time or two, is all I heard him say. I heard the commotion in their room, it sounded like bumping against the wall or over a chair. . . The condition of the room of this young couple was pretty badly torn up. . . The bed-springs looked like they had been knocked down at the end of the bed. . . When I I went to the door I suppose Elizabeth was dead; the young man was living. I didn't hear him say anything; only he says, 'Do something for me.' He was carried away from there to the hospital that night. Mr. Eich's body was removed first." Another witness testified: "I went to that room. The condition of the room was ramshackled around."

From this testimony the jury would have been authorized to find that Eich and the deceased upon entering their room engaged in a fight. One of the witnesses described it, as he judged of it by the noise, that they were having a scuffle or fight. The jury would have been authorized to find also that this statement was corroborated by other evidence, judging by the noise made and the disordered condition of the room and the furniture where the "scuffle or fight" took place; and if they were actually engaged in a fight, as the jury would have been authorized to find, even though the wife was not making such an attack upon the accused as to put his life in peril, as the defendant asserted in his statement, nevertheless, if during the fight and in consequence thereof and because of the passion and excitement aroused thereby the defendant shot and killed his wife, it would be a question for the jury to say whether or not the homicide under these circumstances was voluntary manslaughter. In the case of *Gann* v. *State,* 30 *Ga.* 67, it was said: "We find the principle thus broadly laid down: 'If A and B fall suddenly out, and they presently agree to fight in the field, and run and fetch their weapons, and go into the field and fight, and A kills B, this is not murder, but homicide' (manslaughter). 1 Hale, P. C. 453. 'If, upon a sudden quarrel, the parties fight upon the spot, or if they presently fetch their weapons and go into the field and fight, and one of them falleth, it will be but manslaughter.' 1 Hawkins, 31, sec. 22, 29. 4 Blk. Com. 191. 'Upon words of reproach, or any sudden provocation, the parties come to blows, and a combat ensues, no undue advantage being sought or taken on either side, and death ensues under such circumstances, the offense of the party killing will amount only to manslaughter.'" Certainly

in this case the jury might have found that there were words of reproach, that there was a sudden provocation, that the parties came to blows and a combat ensued, and that death was inflicted under those circumstances. It may be difficult for the ordinary man to conclude that a wife could give any provocation, unless she was armed with a knife or pistol or other deadly weapon, that would justify a husband in inflicting a mortal wound. Yet, under the law, it must be held that the jury in this case were the proper judges of all the circumstances and the significance of all the facts brought out in the testimony; it was for them to determine whether or not the offense of the accused was murder or whether it amounted to manslaughter only; and in order for them to decide this question, it was necessary that they should have the law defining manslaughter submitted to them. Where the law of mutual combat is essential to a consideration of the case, the charge of the court should submit it to the jury, even though no request therefor is preferred. *Harris* v. *State,* 152 *Ga.* 199 (108 S. E. 781).

What is said above also covers the second ground, wherein error is assigned upon the failure of the court to charge the law of voluntary manslaughter as applicable to the case of one who kills because of an unprovoked assault or attempt by the person killed to commit a serious injury upon the person killing; for from the evidence the jury would have been authorized to find that there was a violent "scuffle," combat, or fight between the parties. The conclusion which we have announced necessarily follows, in view of all the evidence, from the rule laid down by this court in more than one decision, that "where there is evidence sufficient to raise a doubt, however slight, upon the question whether the homicide was murder or manslaughter, voluntary or involuntary, it is the duty of the court to charge on all these grades of homicide." *Freeman* v. *State,* 158 *Ga.* 369 (123 S. E. 126).

The court should also have instructed the jury upon the law of voluntary manslaughter, to be applied in case they found that there were other "equivalent circumstances" to justify the excitement of passion and to exclude all idea of deliberation or malice. This follows from the rulings we have just stated and from the evidence tending to show that there was a fight or scuffle beginning on the porch of the house in which the killing occurred; that this fight or scuffle continued after the accused and his wife entered

their bedroom; that there was a fight or scuffle in the bedroom, which the jury were authorized to find was of such a nature that "lumbering or blustering noises" were produced; that persons in other parts of the house heard a commotion in the room where the fatal shot was fired; that there were noises which sounded like "bumping against the wall or over chairs;" that the condition of the room was badly torn up; and that the bed-springs looked like they had been knocked down at the end of the bed.

■ The ruling stated in the third headnote requires no elaboration.

■ A part of the court's instructions to the jury was as follows: "I charge you, if you believe that the State's evidence in this case establishes to your satisfaction beyond a reasonable doubt the fact that the defendant fired the pistol bullets into the body of his wife, from which death ensued, the law presumes that such shooting was done with malice, and the burden would be shifted to the defendant to establish by reasonable evidence, or his statement, to your satisfaction, that the shooting was done under circumstances of mitigation or justification; and if he fails to carry this burden and rebut this presumption of malice, the killing would be murder and you should so find." In *Crawford* v. *State,* 12 *Ga.* 142, it was said: "Where on a trial for murder the defendant introduced no evidence, and the court charged the jury, among other things, 'that if they believed from the evidence that the prisoner struck the fatal blow that killed deceased, then the law imposed on him the obligation to show he was justified in so doing, and makes the killing murder, and it is *on the prisoner to produce evidence* of justification, to reduce the crime to manslaughter, or justifiable homicide, if he could by proof:' *Held,* that this charge was erroneous, and that the circumstances of justification, or of mitigation, might as well be made to appear from the evidence on the part of *the prosecution,* as from evidence produced *by the defendant."* In *Green* v. *State,* 124 *Ga.* 343 (4) (52 S. E. 431), it was said: "When on the trial of one charged with murder the accused admits the homicide but at the same time states circumstances of justification or alleviation, and the only testimony of witnesses which proves the homicide also discloses circumstances of mitigation or justification, it is error for the court to charge, without qualification, 'When a homicide, however, is proven, the burden is on the slayer to justify or

mitigate the crime or the offense.'" And in *Mann* v. *State,* 124 *Ga.* 760, 764 (53 S. E. 324, 4 L. R. A. (N. S.) 934), it was said: "The principle of the foregoing decisions was applied in *Green* v. *State,* 124 *Ga.* 343, wherein it was recognized that it was 'a well-established rule in this State, that, where a killing of a human being is proved, and the evidence adduced to establish the killing does not show circumstances of justification or alleviation, malice will be inferred. But if the evidence relied upon by the State to show the killing contains circumstances of alleviation or justification, the burden of proving that the crime was murder is not shifted.' The charge given in that case was held to be inapplicable, because all the evidence introduced to establish the killing, as well as the defendant's statement, showed mitigating circumstances." In the present case it was for the jury to say whether or not, in connection with the evidence for the State showing the homicide, there were circumstances of justification or mitigation or alleviation. The charge complained of might have been proper if there had been a witness testifying to the killing who did not state facts which would have authorized the jury to pass upon the question as to whether or not there were circumstances of alleviation or mitigation. The case as made by the witnesses for the State depended upon circumstantial evidence, their testimony showing that there was a scuffle or fight on the porch, and that the scuffle or fight continued into the bedroom. Their testimony in reference to these facts was not of such a chacter as to show positively that there were or were not cirsumstances of mitigation or alleviation, but left it where the jury would have to pass upon that question; and consequently it was error for the court, under the authorities from which we have quoted and others that we might cite, to charge that "if the defendant fired the pistol bullets into the body of his wife, from which death ensued, the law presumes that such shooting was done with malice, and the burden would be shifted to the defendant to establish by reasonable evidence, or his statement, to your satisfaction, that the shooting was done under circumstances of mitigation or justification."

▇▇ The rulings in headnotes 5 and 6 require no elaboration.

*Judgment reversed. All the Justices concur.*

RUSSELL, C. J., and ATKINSON, J., dissent from the ruling in the sixth headnote.