18510. ASKINS *v.* THE STATE.

ARGUED MARCH 8, 1954—DECIDED APRIL 13, 1954.

*John H. Goddard, Robert H. Smalley,* for plaintiff in error.
*John J. Flynt, Jr., Solicitor-General, Eugene Cook, Attorney-General, Rubye G. Jackson,* contra.

HEAD, Justice. 1. In ground 1 of the amended motion for new trial, it appears that, at the conclusion of the cross-examination of a witness for the State (Zollie Mae Reid) by counsel for the defendant, counsel for the State made the following statement: "If the court please, at this time I would like to state in my place that, if the law of Georgia permitted the State to call Naola Askins, the wife of Otis Askins, the State would do so at this time. But under the law of Georgia that Naola Askins can not testify either for or against her husband in a criminal case." Thereupon, it appears from the record that the following occurred: "[Counsel for the defendant] I object to this whole statement. It is prejudicial, and the law of Georgia being what

it is, I feel there is no purpose in having it in the record. It is prejudicial to this defendant for him to testify as to what he would like to do if the law were so and so. There are lots of things I would like to do, lot of things. [The Court] I didn't understand him to testify to it, I understood him to make that statement. [Counsel for the State] In my place. [The Court] All right, I will admit it."

In this ground it is insisted that the remark made by State's counsel was highly prejudicial to the defendant. In *Heard* v. *State*, 210 *Ga.* 108 (78 S. E. 2d 38), it was held: " 'When improper argument to the jury is made by an attorney for one of the parties, it is necessary, in order to make the same a basis for review, that opposing counsel should make objection to such argument or invoke some ruling or instruction with reference thereto by the court; but it is not essential that a motion for mistrial should be made.' *Brooks* v. *State*, 183 *Ga.* 466 (188 S. E. 711, 108 A. L. R. 752)." See also Code § 81-1009; *Mims* v. *State*, 188 *Ga.* 702, 704 (4 S. E. 2d 831). The objection of counsel for the defendant having been overruled by the statement of the trial judge, "All right, I will admit it," there was nothing further that counsel for the defendant was required to do. Had the trial judge excluded the statement of counsel for the State as not being "admissible," or had he instructed the jury not to regard the statement as evidence, it would have then been the duty of counsel for the defendant, if he was not satisfied, to have made a motion for mistrial, but when the court "admitted" the statement, a final ruling was made, and counsel for the defendant was not required to undertake to debate the matter further with the court.

It is contended in the brief of counsel for the State that there is "ample authority for the action of the solicitor-general in calling the wife of the plaintiff in error to the door and making the statement which he made." We recognize the rule stated in *Mims* v. *State*, 207 *Ga.* 118 (60 S. E. 2d 373), that it was not error to call the wife of the accused to the door in the presence of the jury for the purpose of identification. Such is not the record in the present case. Previously to the making of the statement, counsel for the State inquired if the wife of the accused was in the witness room, and was advised by the sheriff that she

was not there. The ruling in the *Mims* case, supra, has no application to the facts of the present case.

The second contention made by counsel for the State is that "it was incumbent for the State to either produce or explain the nonproduction of every eyewitness to a homicide which the State contends is murder." This contention can not be sustained by the record. The witness Zollie Mae Reid had testified that she was talking to the wife of the defendant. She did not state that the defendant's wife saw the homicide or was in a position to see it, and no other witness for the State prior to the time of the statement made by counsel had testified that the wife of the defendant knew anything about the homicide. Counsel for the State was not required to explain the nonproduction of the wife of the defendant, nor would the circumstances of the case leave counsel with no other alternative than to explain why an eyewitness was not called.

Counsel for the State suggests that "it is never error to make a correct statement of the law." In the first place, the duty is upon the trial judge to instruct the jury as to the law and this duty is not properly chargeable to the solicitor-general. In this State the decisions of this court are by the court of last resort, in so far as the State is concerned, and yet it has been held that in some instances it is inappropriate for a trial judge to charge a jury in the language of a decision of this court. *Leonard* v. *State,* 133 *Ga.* 435, 437 (66 S. E. 251). Under no theory contended by the State was the statement authorized.

Was the statement prejudicial to the defendant? On this point the decisions by courts of other States are not without conflict. Russell *v.* State, 185 Miss. 464 (189 So. 90); Outlaw *v.* State, 208 Miss. 13 (43 So. 2d 661); People *v.* Trine, 164 Mich. 1 (129 N. W. 3); State *v.* Brown, 118 La. 373 (42 So. 969). It does not appear that this court has ever been called upon to rule upon this question.

In Graves *v.* U. S., 150 U. S. 118 (14 Sup. Ct. 40, 37 L. ed. 1021), it was held: "The wife of a person accused of crime is not a competent witness, on his trial, either in his own behalf or on the part of the government, and a comment to the jury upon her absence by the district attorney, permitted by the court after objection, is *held* to be reversible error." In the present

case the statement of counsel for the State was much more injurious and damaging than was the conduct of the prosecutor in the Graves case.

Here the implication to the jury was that the wife of the accused was ready and willing to testify to damaging facts against the accused, and that she would so testify, except that under the law of Georgia she could not give testimony against her husband. Other implications from this statement by counsel for the State could arise in the minds of the jury. All injurious effects and all implications might have been erased from the minds of the jury by proper action by the trial judge. This was not done, and for the trial judge to admit such a statement by the solicitor-general, made "in his place" as an officer of the court, imported a verity not less creditable than a statement under oath.

Where the facts of any case are in substantial accord with the facts in the present case, it would be error to "admit" a statement by the solicitor-general in the language here employed by him. If the injury to the defendant in this or any like case might be classified as to degree, then the injury in the present case would be of the highest degree, due to the high character and ability of the State's counsel. It was error requiring the grant of a new trial to "admit" the statement of counsel for the State.

2. In ground 2, it is asserted that the court erred in deciding in favor of the competency of the witness, Mary Louise Favors, the daughter of the deceased, who was nine years old. The questions propounded by counsel for the State, counsel for the defendant, and by the court are set out in the ground, with the answers of the witness.

"The court must, by examination, decide upon the capacity of one offered as a witness, and objected to as incompetent on account of childhood, so far as to determine whether the witness shall be allowed to testify. His determination of this preliminary question will not be reversed, unless plainly erroneous." *Frasier* v. *State*, 143 *Ga.* 322 (3) (85 S. E. 124); Code § 38-1610; *Richardson* v. *State*, 141 *Ga.* 782 (82 S. E. 134).

Under previous rulings of this court, the ruling of the trial court holding the witness to be competent will not be reversed.

*Johnson* v. *State,* 61 *Ga.* 35; *Moore* v. *State,* 79 *Ga.* 498 (3), 502 (5 S. E. 51); *Minton* v. *State,* 99 *Ga.* 254 (25 S. E. 626); *Young* v. *State,* 125 *Ga.* 584 (4), 586 (54 S. E. 82); *Reece* v. *State,* 155 *Ga.* 350 (116 S. E. 631); *Gordon* v. *State,* 186 *Ga.* 615 (198 S. E. 678).

3. In ground 3, it is contended that the court erred in failing to charge the law relating to mutual combat. The deceased and the defendant, prior to the homicide, lived in adjoining houses. The defendant in his statement claimed that the deceased started an argument and picked up a rock and menaced him with it, whereupon he went in his kitchen and got a knife and came out in the yard; the deceased then came around to the front of the house, "cussing and throwing" at him, and he defended himself.

The only evidence in the case pertinent to the question of whether or not the trial judge should have charged on mutual combat is as follows:

Laurie Pritchett, sergeant detective with the Griffin police force testified for the State, that the defendant made a statement to him, as follows: "Otis said he was in his house looking at TV, he and his wife, and he got hungry and went in the kitchen to get something to eat, and while in there Willie [the deceased] came by and spoke to them and Otis said he told Willie, asked him how he was getting along, he told him he was all right, and he said he was speaking with his wife, and they went into his house. After Willie got to his porch he came back to my house at the middle window and I went to the back porch and asked Willie what was the matter with him, and Willie said, he didn't hear him at first because he was talking to two women across the street. Otis asked Willie again what he was doing and he told him he wasn't doing nothing and he says Willie cursed him, and Otis told him he was drinking, to go in the house and go to sleep. . . Otis said Willie went to cursing and picked up a rock. Otis went back in the house and said Mr. Willie seen me on the porch and called me [a vile name] and said he was going to kill me. Askins said Willie threw a rock and hit him on the shoulder. He hit Willie with the knife and went in the house and was putting on his shoes and socks when the police got there."

Hassie Goodman, a witness for the defendant, stated in part:

"I saw the defendant and Willie Favors on . . . the date when Willie Favors got killed. . . At that time I was at home lying down, and my husband was out on the back and he called me and told me to get up. I got up and went to the back porch, and I could see Willie Favors and Otis Askins. They were in the back yard. When I saw them first Otis come out of his back door. Willie was out there in the back yard. As to whose back yard he was in, the back yard joins together, I guess it was his back yard. . . Otis asked Willie Favors to stay out of Otis' back yard. Willie wasn't doing nothing but standing out there at that time. As to whether they were arguing, they talked so easy you couldn't hear them hardly. It wasn't very loud, and so they said a few words and Willie started on around to the front. Willie had a rock in his hand when I first seed him. He was just standing and arguing. I did not see him make any motion with his hand, didn't make no motion at all. As to whether I heard Willie say anything to Otis, I heard Otis tell him to stay out of his back yard, 'Stay out of my yard.' Willie Favors said, 'You can't whop me, [cursing].' He said, 'I will show you, Sam Stokes [undertaker] will pick you up,' and started around to the front porch and after a while Willie came and turned back. He still had a rock in his hand, and so this boy, he just run up to him and hit him in the heart. . . Willie had a small rock in his hand when he was standing in the back yard. Otis didn't do nothing when he was standing on the back porch and they were arguing, he just talked to him. He went back in the house and Willie started around to the front and Otis come on out and I don't know what Otis said to him, but Willie turned around and come back. This was after Willie was there with a rock in his hand, but Willie didn't try to hurt him, throw it or nothing, but he was standing there with a rock in his hand."

Sims Goodman testified for the defendant in part: "As to whether I saw Otis and Willie Favors on or about August 2nd of this year, I seed them when I got up and went out there to wash my face. . . When I got out there I seed Willie was laying over this way, he had two rocks in his hand, and I went in and told my wife, 'There is a fight out here,' and we went to the door and looked, and Willie said, 'Get out of my yard, or I will

take you out.' He said, 'No, I ain't going no where.' He give a sign this way (indicating with his hand). . . Otis and Willie were right there in Otis' back yard. There was a narrow space just little wide enough to drive a car through there in. When I went out Otis and Willie were arguing. I don't know where they started from. They were arguing when I first saw them. When I seed Willie, he had two rocks, one in each hand. He was waving one hand with those rocks, that was in his hand like this, and waving them this way, and this boy was standing there at the window looking in when he said, 'Get out of his yard.' What he did this for when he said he knowed he couldn't whop him, he said, 'If you don't get out of this yard Stokes will come and pick you up.' I went back in the house, and when I come back, I seed Willie had fell up against the house. . . As to whether I saw Willie with these rocks in his hands and fussing with Otis, both of them were cussing. Then Otis got up and went in the house and come out, and come out with a knife or something in his hand and he hit him up here, and I seed him then, I couldn't see him good, he was falling up against the house and his head struck the corner of the house."

"There need not be mutual blows to constitute a mutual combat. There must be a mutual intent to fight, and if this exists and but one blow be stricken, the mutual combat exists, even though the first blow kills or disables one of the parties." *Tate* v. *State,* 46 *Ga.* 148 (3); *Findley* v. *State,* 125 *Ga.* 579, 583 (54 S. E. 106).

From the evidence in this case the jury might have concluded that the defendant and the deceased mutually intended to fight, that the deceased was armed with a rock or rocks, and the defendant went into his house and armed himself with a knife. Where there is evidence sufficient to raise a doubt that a homicide charged as murder may have been committed in mutual combat, it is the duty of the court to instruct the jury on this phase of voluntary manslaughter. *Freeman* v. *State,* 158 *Ga.* 369 (123 S. E. 126); *Eich* v. *State,* 169 *Ga.* 425, 429 (150 S. E. 579).

It was error in this case to fail to instruct the jury on voluntary manslaughter as related to mutual combat. *Gann* v. *State,* 30 *Ga.* 67; *Caruthers* v. *State,* 95 *Ga.* 343 (22 S. E. 837); *Bailey*

v. *State,* 148 *Ga.* 401 (96 S. E. 862) ; *Little* v. *State,* 150 *Ga.* 728 (105 S. E. 359) ; *Harris* v. *State,* 152 *Ga.* 199 (108 S. E. 781) ; *Buchanan* v. *State,* 153 *Ga.* 866 (113 S. E. 87) ; *Daniels* v. *State,* 157 *Ga.* 780 (122 S. E. 223).

4. In ground 4, error is assigned on the refusal of the court to permit a witness, Homer Carden, to testify. The basis for the alleged error arose during the examination of the defendant's witness, Hassie Goodman. From the record it appears that counsel did not comply with the rules sufficiently to show entrapment by this witness. The only question and answer shown in this ground as the basis for a contention that counsel had been entrapped are as follows:

"[By defendant's counsel] Q. I will ask you, Hassie, remembering now that you are under oath, if you didn't tell me three minutes ago you heard that? [Reports in the community that deceased was going with defendant's wife]. A. No, sir, I never seed nothing wrong."

Generally hearsay evidence is not admissible, and in the absence of some showing that the statements counsel sought to elicit from the witness would be admissible in evidence under some exception to the hearsay rule, it would not be error for the trial court to refuse to permit another witness to testify that the previous witness had made statements to counsel which amount to nothing more than hearsay evidence.

*Judgment reversed. All the Justices concur, except Duckworth, C. J., who dissents from the rulings in divisions 1 and 3, and from the judgment of reversal. Candler and Hawkins, JJ., dissent from the ruling in division 1, but concur in the judgment of reversal.*