38583. ATLANTIC COAST LINE RAILROAD COMPANY v. McDONALD.

DECIDED FEBRUARY 24, 1961—REHEARING DENIED
MARCH 10, 1961.

*Bennett, Pedrick & Bennett, Larry E. Pedrick, John W. Bennett,* for plaintiff in error.

*Benjamin Smith, Jr., Leon A. Wilson, II,* contra.

CARLISLE, Judge. ■ The first special ground of the motion

for a new trial complains of the failure of the trial judge to charge without request that the plaintiff employee was charged with the duty of exercising ordinary care for his own safety. This case, of course, is one under the Federal Employers' Liability Act. In charging the jury the law applicable to the case, the judge said: "Gentlemen of the jury, the law I referred to [Federal Employers' Liability Act] further provides that in all such actions the fact that the employee may have been guilty, himself, of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee. . .

"Now, gentlemen of the jury, in further reference to contributory negligence, to which I have just referred, I call your attention and instruct you that you should remember that under the law under which this suit is being tried contributory negligence, if any, on the part of the plaintiff, Mr. McDonald, shall not be a bar to his recovery. Under the Federal Employers' Liability Act the diminution of damages is proportionate to the amount of negligence attributable to the employee. . .

"Negligence means the absence of or the failure to exercise the degree of care required by law to be exercised.

"I charge you, gentlemen, that the duty is upon the defendant to exercise ordinary diligence.

"Ordinary diligence is that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances.

"The absence of such diligence is termed ordinary negligence.

"If the defendant exercised that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances to prevent injury to another, it would not be guilty of negligence in failure to exercise ordinary care.

"If, on the other hand, it failed to exercise that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances, it would be guilty of negligence in failure to exercise ordinary care. . .

"I charge you further, gentlemen, where the injury was the joint result of the negligence of the defendant railroad in some one or more of the negligent acts alleged by plaintiff on the part of the

railroad and plaintiff, there may be a recovery by plaintiff, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to the plaintiff. It is only where the act or omission on the part of the plaintiff is the sole cause when the defendant's negligent acts, if any, are no part of the causation the defendant is free from liability under the Federal Employers' Liability Act.

"I charge you, gentlemen, that if you find that plaintiff was injured solely by reason of his own negligence he cannot recover."

These instructions were proper and sufficiently informed the jury as to the applicable law respecting the duty of care devolving upon the respective parties under the Federal Employers' Liability Act. It would not have been proper for the trial judge to have charged without qualification that a duty devolved upon the plaintiff of exercising ordinary care. *Plaspohl v. Atlantic Coast Line R. Co.*, 87 Ga. App. 506, 508 (2) (74 S. E. 2d 491). This ground of the motion shows no error.

■ In the second and third special grounds of the motion for a new trial, complaint is made of the following portions of the charge: "I charge you that in passing upon the question of pain and suffering you may consider any impairment of and damage to the plaintiff's body resulting from such injuries, if you find such to be from the evidence. I charge you that every person under the law is entitled to retain and enjoy each and every power of body and mind with which he may have been endowed, and no one without being answerable, can wrongfully deprive another by a physical injury of any power or faculty or materially impair the same. Such deprivation or impairment is properly classed with pain and suffering, and they should be considered by the jury in its determination in that respect.

"Now, gentlemen of the jury, in addition, the plaintiff contends as another item of damage, that he has suffered loss of earnings by being out of his usual occupation since February 21, 1958. I charge you, gentlemen, that damages are given as compensation for injury, and if you find that the plaintiff suffered financial loss by being away from his usual occupation and means of livelihood for any period shown to you by the evidence, and if you find that he is otherwise entitled to recover, you may award to

him as damages such loss of earnings as you find from the evidence he suffered in this instance.

"Now, gentlemen of the jury, another item of damage which the plaintiff claims and which he seeks to recover in this case is the alleged total and permanent impairment of his earning capacity. The plaintiff claims that his earning capacity has been impaired, and you will decide from the evidence whether his alleged injuries are permanent, that is, will the injuries continue into the future; will they continue as long as he lives, or whether they will get well and leave him able to work and earn money; but if you believe the injuries are permanent, or will continue into the future, or will continue as long as he lives, and that he would be entitled to recover damages for his future impairment, you will determine, if the evidence shows, the extent of such impairment and the reasonable facts upon which you can make a calculation as to the loss upon this specification, provided he is otherwise entitled to recover under the rules of law as given you in charge by the court."

These portions of the charge are excepted to, the substance of the exception being that they authorized a double recovery; that the plaintiff could not recover and the jury could not award damages based on pain and suffering as the result of the plaintiff's loss of the ability to labor and earn money, and also award damages for loss of earnings. This contention is without merit in view of the ruling in *Jones v. Hutchings*, 101 Ga. App. 141 (113 S. E. 2d 475), wherein in the majority opinion and in the dissenting opinion practically all of the leading and important cases in Georgia on this subject were reviewed and discussed. Further review of those authorities here would serve no useful purpose.

In a proper case, that is, in a case where under the pleadings and the evidence the plaintiff's capacity to work and labor and earn money is shown by the evidence to have been permanently impaired as the result of the tort complained of, and where the evidence further shows what the plaintiff's earnings were before the injury and the nature and extent of his disability resulting from the injury and otherwise furnishes facts from which a computation can be made as to the actual amount of decreased earnings past and prospective, the jury may be authorized to

award special damages for such lost earnings. In this case the evidence sufficiently shows facts so as to authorize the charges submitting these elements of the plaintiff's claim to the jury for their consideration, and the charge is not, therefore, subject to the criticism made in these grounds of the motion for a new trial.

■ The 4th, 5th and 6th special grounds of the motion for a new trial complain because the trial court, over timely objections of counsel for the defendant, permitted counsel for the plaintiff to indulge in improper argument to the jury. The argument set forth in each ground and the objection thereto in each instance, and the rulings of the court and material colloquy of counsel and court are as follows:

(4). "[Mr. Wilson] This case was brought under the Federal Employers' Liability Act, commonly called the F. E. L. A. It is contained in Title 45, United States Code, Sections 51-60. This is the Federal Compensation Act for employees of railroads engaged in interstate commerce.

"You must understand at the outset that this sort of proceeding is not the same as an ordinary law suit by one person against another for negligence. This is the only compensation act which applies to a railroad man.

"The history of this act is necessary for you to fully understand the difference between it and an ordinary action for negligence.

"Before the passage of the act, the need for it had become a national scandal.

"Mr. Pedrick: I object to the line of argument of my friend stating it is necessary for him to give a history. He started to make a statement of certain percentages, which was giving facts and quoting statistics that have no bearing on the case and are not in evidence.

"We object to counsel in his statement to the jury stating that the Federal Employers' Liability Act is a compensation act, and that the history of it is that when the first act was passed the situation respecting railroad employees was a national scandal, and he had begun to say that injuries to switchmen were such number or percentage, and started to quote statistics. None

of that is relevant, and it is not proper argument, and we object to that type of argument. . .

"The Court: I think possibly it might be a good idea to leave out arguing to the jury as to statistics in other cases.

"Mr. Pedrick: Does Your Honor understand I am objecting to his entire line of argument?

"The Court: Yes. Gentlemen of the jury, you will not consider in your deliberations anything that Mr. Wilson has stated in his remarks to the jury with reference to any statistics that might have been compiled in other cases."

(5) "Mr. Wilson: . . . By these three rules the railroad did secure an immunity from suits of the railroad employees, and because they were secure and immune behind those old rules of common law they did virtually nothing to protect the safety of the workers.

"Now you might ask what are these three rules. The fellow servant rule was this: The master or employer was never responsible for the negligence of his employee or another employee. The master was not responsible for an act of negligence of his servant committed upon another servant, and, therefore, in railroad cases where one railroad worker injured another through his negligence the railroad was not responsible. That's the first one.

"The assumption of risk rule, which came down from the common law of England was that if a worker went onto a dangerous job he assumed the risk of that job, and that he could not complain if he was injured.

"Mr. Pedrick: Now, if Your Honor please, I don't want to keep interrupting. I just want to get this in the record, that the argument here with respect to the abolishment of the fellow servant rule and the abolishment of the assumption of risk rule have no bearing on this case; there is no pleading on the part of the defendant of any fellow servant rule or any assumption of risk, and we say, if Your Honor please, that this is highly confusing to argue those things that are not in issue, and they are intended only to try to inflame the jury with respect to something that the railroad company is not responsible for. We are not pleading that, we are not contending for it, and we think the case should be tried strictly on the issues as made by the pleadings in this case.

"Mr. Wilson: Your Honor, it is obvious from the evidence and the case that has been made on the part of the defense that they are attempting to bring in these identical rules under a different name of non-negligence, and we will connect this argument up with that, Your Honor. I think that it is necessary for us—we are going to cite the law. I think it is necessary for the jury to understand the history behind the enactment of this law, and the meaning of the amendment under which this law has been tried and is being tried. Now, we feel like it is very vital to our case that we be able to discuss this with the jury. Again, Mr. Pedrick, if I am not citing what the law is he can answer it in his argument.

"The Court: Do you care to be heard any further?

"Mr. Pedrick: Just this, if Your Honor please: I'm not going to argue on issues of law that are not in the case. I'm not going to try to answer him. I'm not going to argue the fellow servant doctrine or the assumption of risk. It's just not in the case. We are not contending for it, and, therefore, it should not be argued to the jury as something that was in and now out.

"The Court: Well, your contention is that you intend to connect what you are arguing with the law as applied in this case.

"Mr. Wilson: As it applies in this case, Your Honor—the specific rulings of the court—of the Supreme Court—in which they have stated that the defendant may not come into court and defend on these basic principles under a different name of non-negligence.

"The Court: Note his exception. I will let you proceed. I will see how you connect it.

"Mr. Wilson: All right, sir.  .  .

"[Mr. Wilson]: Now, back to the assumption of risk rule, gentlemen, as I stated, that was the rule which did not allow an employee to recover against his employer when he entered in upon a dangerous job or occupation. They stated, in effect —that rule stated—that if it is dangerous you assume that risk by taking the employment. The other contributory negligence was this, that if the employee was negligent in any degree in bringing about his own injury that he could not recover, even though his employer was also negligent.

"Now these rules of law have been abolished by the F. E. L. A. —the Federal Employers' Liability Act. The act was later amended and provides that the defendant could bring his case in state court and is not subject to removal in the Federal Court."

(6). "Now, in order to understand better the reason and purpose of the legislation under which the F.E.L.A. was passed I would like to cite Mr. Justice Douglas, in 366 U. S., page 53: 'The Federal Employers' Liability Act was designed to put on the railroad industry some of the cost for the legs, eyes, arms, and lives which it consumed in its operation. The purpose of the act was to change that strict rule of liability to lift from the employees the prodigious burden of personal injuries which that system had placed upon them, and to relieve men who, by exigencies and necessities of life are bound to labor from the risks and hazards that could be avoided or lessened by the exercise of proper care on the part of the employer in providing safe and proper machinery and equipment with which the employee does his work.'

"Mr. Pedrick: Now, if Your Honor please, I hope this is my last objection. Counsel there is reading excerpts from other decisions, directly to the jury, so far as that goes, if Your Honor please, and those things are not proper. The Justice of the Supreme Court tries to write in a general term in another case about injury to life and limb and eyes and feet—it doesn't illustrate this case at all, and it's not proper argument, and our courts have so held; and if that type of argument continues I want my objection to be continued on that.

"The Court: Do you want to be heard on that?

"Mr. Wilson: No, Your Honor.

"The Court: All right, go ahead, I will instruct you this, now: Any citations that you cite will be addressed to the court—not to the jury, but to the court in the presence of the jury.

"[Mr. Wilson] The purpose of the act was to change that strict rule of liability to lift from the employees the prodigious burden of personal injuries which that system had placed upon them, and to relieve men who, by the exigencies and necessities of life are bound to labor from the risks and hazards that could

be avoided or lessened by the exercise of proper care on the part of the employer in providing safe and proper machinery and equipment with which the employee does his work.

"Now, gentlemen, digressing and addressing my remarks to you for a few brief moments, you've heard the reading of the law, and I want to call your attention again that if the injury resulted from the negligence of the railroad, or one of its servants, in whole or in part, if any degree of negligence attaches to the railroad or one of its employees for this injury, then, it is incumbent on you under your oaths to return a verdict in favor of the plaintiff in this case.

"Now, going to the contributory negligence phase, in which it says that contributory negligence, even if the plaintiff himself were negligent, and that negligence combined with the negligence of the railroad or its employees to produce the injury of which he complains—and in answer to Mr. Pedrick's argument that this man was negligent because he didn't go take off his clothes, I want to call your attention to this, gentlemen: He doesn't carry around his lawyer and his doctor to tell him what to do when he's injured. And you must remember, gentlemen, that this caustic material came onto him, and there was the injury; there was the negligence, without any fault on his own part. He had a right to be where he was; he had a right to do what he did; he was there where the company told him to be, and as a result of it this caustic material shot down on him. The fact that he could have prevented further injury by slipping his clothes from his body in February weather and holding himself up in some store room close by—that is the defense that Mr. Pedrick wants to present. That is not sufficient under the law. It simply says this: If the employee's own negligence contributed to the injury, then you have a right to reduce that which he should be entitled to recover in comparison with the amount of negligence.

"Now, let's take an example: If you found that a man was entitled to $100,000 worth of damages as a result of his injuries, and that the railroad was sixty percent negligent and the plaintiff was forty percent negligent. The law would simply reduce the damages from $100,000 to $60,000, and it would be

your duty to return a verdict in such an amount. Now, that is just an example.

"The assumption of risk has been entirely abolished, and, gentlemen, be careful, be careful, that you do not fall into one trap that Mr. Pedrick will seek to cause you to fall into, and that he will call these other facts which make up assumption of risk—he will call it something else. He will give it another name, but it will still be the assumption of risk. Go back to the purpose for which this act was established—to place upon the railroad some of the costs to its employees, some of the losses occasioned by them.

"They claim the railroad was not negligent. Why? Because he should have got out of the way. That's the assumption of risk. That's non-negligence as stated in Rogers versus the Coast Line Railroad Company, which is the very thing they tried to do in that case—just to call it another name; and we state again what the Supreme Court of the United States said: 'Unless great care is taken the servant's rights will be sacrificed by simply charging him with assumption of risk under another name, and no such result can be permitted under this law.' "

"Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same; and, on objection made, he shall also rebuke the counsel, and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the plaintiff's attorney is the offender." *Code* § 81-1009. A careful reading of the quoted portions of special grounds 4, 5 and 6 above will show that counsel for the defendant made a timely objection to the argument of counsel for the plaintiff and that the court, in effect, in each instance overruled that objection. No motion to rebuke counsel or motion for a mistrial was made, but no such motions were necessary in order to present for review a question as to the propriety of such argument. *Southern Ry. Co. v. Brown,* 126 Ga. 1, 5 (4) (54 S. E. 911); *Brooks v. State,* 183 Ga. 466 (188 S. E. 711, 108 A. L. R. 752); *Askins v. State,* 210 Ga. 532, 533 (81 S. E. 2d 471). These grounds of the motion for a new trial and the

record before this court show that there was no evidence before the jury, and, in fact, none could have been placed before the jury, regarding the history of the Federal Employers' Liability Act and the reasons behind its enactment. Such questions had no place in the jury's deliberations as to the merits of this case. *Southern Stages v. Brown,* 76 Ga. 694 (1-5) (46 S. E. 2d 765). The argument of counsel for the plaintiff was clearly improper, and the trial court should have sustained the objection of counsel for the defendant and excluded such argument in its entirety from the consideration of the jury. The court refused to grant to the defendant the mildest form of relief to which he was entitled from the effects of such improper argument, and it was not incumbent upon counsel for the defendant to undertake to debate the matter further with the trial judge by asking him to grant more drastic relief of rebuking counsel for the plaintiff in the presence of the jury nor to move for a still more drastic remedy of a mistrial.

Under the provisions of *Code* § 81-1009, it is the duty of the court to interpose and prevent the argument of prejudicial matters which are not in evidence. This duty is but a specific application of the general duty of the trial judge to see, irrespective of the conduct of counsel in making objections or in failing to make objections, that the trial is fairly conducted. The trial judge is more than a mere chairman preserving order at a meeting or a moderator of a debate, "he is a minister of justice with duty to govern the progress of a trial." *Heard v. Heard,* 99 Ga. App. 864, 869 (110 S. E. 2d 76). The Code section referred to above charges him specifically with the duty of preventing improper argument, irrespective of an objection by opposing counsel. It follows that even though the ruling complained of in special ground 5 was merely a conditional one permitting the argument to continue, and even though this ground fails to show that counsel for the defendant renewed this specific objection, yet when all of these grounds are considered together they show that counsel for the defendant was at all times strenuously objecting to and insisting upon his objections to all of the irrelevant and improper argument of counsel for the plaintiff. These grounds further show that the argument was not only im-

proper but related to prejudicial matters which were not in evidence, and each of these grounds will be treated as an assignment of error upon the failure of the trial judge to act in accordance with the mandate of *Code* § 81-1009. Each of them shows harmful and reversible error in this respect, and each ground requires the grant of a new trial in this case.

■ Special grounds 7, 8 and 9 complain of the admission in evidence over timely objection of counsel for the defendant of testimony of two witnesses in the nature of opinion evidence, it being contended that these witnesses were not qualified as experts and, therefore, should not be permitted to express their opinion in the matter to which they testified. R. W. Harden, one of the witnesses, was shown to have been one of the plaintiff's coworkers engaged with him in applying the caustic solution and washing it off the engine at the time the solution, which it is contended caused the plaintiff's injuries, was splashed onto the plaintiff. This witness on direct examination had gone into considerable detail as to the manner and method used by the employees in applying the solution to the engine and washing it off and was shown by the evidence to have been engaged along with the plaintiff in this type of work over a period of several years. He was asked if the railroad could have furnished any kind of rain suit, which if worn by the employees doing this job, would have provided protection against their being splashed while working with this solution. On objection the question was rephrased and he was asked merely would a rain suit have been any protection for him on the job, to which he replied that it would have been. In special ground 8, the testimony objected to was to the effect that a safer method of doing the job would have been for the other employees to have stood back from the engine while one or two of them washed the engine down. With regard to the evidence objected to in special ground 7, it appears from the record that Mr. Harden was later asked on cross-examination by counsel for the defendant what other protective clothing he would say would have been proper for the employees to have worn, to which question the witness answered that they should have had rains suits when they washed the caustic solution off the engines. With regard to the evidence objected to

in special ground 8, it again appears from the record that at another point in his testimony this witness was asked substantially the same question and his answer to substantially the same effect was admitted without objection. These grounds, therefore, show no harmful error. *Louisville & Nashville R. Co. v. McCamy*, 72 Ga. App. 769 (1) (35 S. E. 2d 206); *Holsenbeck v. Arnold*, 75 Ga. App. 311 (2) (43 S. E. 2d 348).

With respect to special ground 9, it appears that the testimony there objected to was that of another fellow employee and co-worker of the plaintiff, who was permitted to testify over objection, substantially, that the solution, when splashed onto one while it was in the process of being washed off the engine under certain described circumstances, was of sufficient strength to cause "pretty severe burns." This witness was shown to have been familiar with the work and it was competent for him to testify from his first-hand experience in this regard, as the evidence shows he was doing. This testimony was not harmful to the defendant. The ultimate question to be decided by the jury in the case was not whether the solution could or could not have caused burns, since, from a careful reading of all the evidence, it must be said that it was in reality conceded by all the parties that the solution used on the engine was capable of causing burns, but the ultimate question was whether any solution was splashed onto the plaintiff, and if so, whether in sufficient quantities and concentration to cause burns, and further, whether such burns had any causal connection with the condition from which the plaintiff was then suffering. The testimony of this witness in this regard in no way encroached upon the jury's prerogative.

■ With respect to the general grounds, it is sufficient to state that in addition to the facts already set forth above, the evidence, while in conflict in many material particulars, was sufficient to authorize, though it did not demand, a verdict for the plaintiff. Inasmuch as the evidence on another trial may not be the same as that adduced upon the trial of the case now before us, it is unnecessary to make any other ruling with respect to the general grounds.

*Judgment reversed. Bell, Frankum and Jordan, JJ., concur. Felton, C. J., Townsend, P. J., and Nichols, J., dissent.*

TOWNSEND, Presiding Judge, dissenting. The fourth, fifth and sixth special grounds of the amended motion for a new trial all assign error on the failure of the court to take necessary steps upon certain objections made to the allegedly improper argument of counsel for defendant in error before the jury. Counsel first stated that the case was brought under the Federal Employers' Liability Act, and the case was not an ordinary law case but one under the only compensation act applying to railroad men; that it was necessary for the jury to know the history of the legislation to understand the difference between it and an ordinary negligence action, and that prior to the passage of the act the need for it had became a national scandal. Objection was made to the statement that the act was a compensation act, to any need for going into the history of the act, to the fact that any other situation was a national scandal, to certain statistics counsel was "about to read" and to "his entire line of argument." This objection was sustained only to the extent that no statistics compiled in other cases should be considered by the jury. Counsel then proceeded to state the difference between an F. E. L. A. case and an ordinary master-servant negligence case by stating that the present act did away with three common-law defenses: assumption of risk, fellow servant rule, and contributory negligence. Counsel again objected on the ground that these were not issues in the case, had not been interposed as defenses, and accordingly were irrelevant, confusing and inflammatory argument. Counsel for the plaintiff then stated that the defendant was in fact trying to bring in exactly these defenses under another name, that of non-negligence, and "we will connect this argument up with that, Your Honor." The court then allowed counsel to proceed, saying, "Your contention is that you intend to connect what you are arguing with the law as applied in this case . . . I will see how you connect it."

Counsel for the plaintiff then commenced reading the stated purpose of the Federal Employers' Liability Act as stated in a Federal case. The defendant again objected that "it doesn't illustrate this case at all and it's not proper argument, and if that type of argument continues I want my objection to be continued on that." The court cautioned counsel to address any

citations of law to the court and not the jury, and counsel continued reading from the case, apparently to the court, but in the presence of the jury. He then expatiated further on the assumption of risk doctrine, and ended by saying: "Gentlemen, be careful, be careful, that you do not fall into one trap that Mr. Pedrick will seek to cause you to fall into, and that he will call these other facts which make up assumption of risk—he will call it something else. . . They claim the railroad was not negligent. Why? Because he should have got out of the way. That's the assumption of risk. That's non-negligence as stated in Rogers versus the Coast Line Railroad Company, which is the very thing they tried to do in that case—just to call it another name; and we state again what the Supreme Court of the United States said: 'Unless great care is taken the servant's rights will be sacrificed by simply charging him with assumption of risk under another name, and no such result can be permitted under this law."

The objections interposed were sufficient to present a question for review to this court as to whether the court erred in permitting the "line of argument" which counsel for the plaintiff made—that is, that based upon certain decisions of the Supreme Court, the purpose of the act under which the case was tried was to abolish certain common-law defenses, and that such defenses should not be permitted although not urged *eo nomine* but under the guise of non-negligence, which, counsel contended, was the fact here before the jury. In *Brooks v. State*, 183 Ga. 466 (188 S. E. 711) it is held that such an objection will give a right to review; that the general rule in *Smoot v. State*, 146 Ga. 76, 81 (90 S. E. 715) is that in no case will the trial judge's ruling be reversed for not going further than requested; that an exception to this rule is that if improper remarks are grave and injurious enough a new trial will be granted whether or not a ruling is invoked, and even though the court has granted all the relief possible short of the grant of a requested mistrial, if the injury is so grave that no act of the trial judge can repair the damaging effect. But it is also there held, p. 469, that "even where there is a basis for review, it does not follow that a reversal should result. . . In such review this court will con-

sider the ruling of the court, together with the motion and the cause of the motion. From these, under the principles applicable thereto, it should be determined whether there is such error as will cause a reversal."

It is not improper to allow counsel to read the law to the court in the presence of the jury. *Rome Railroad Co. v. Barnett*, 94 Ga. 446 (2) (20 S. E. 355). It is not improper for counsel to state legal propositions to the jury. In *Ransone v. Christian*, 56 Ga. 351, 355, it was held: "Where counsel is making a legal argument or battling to establish a legal principle which he wishes the court to charge as the law of the case, he must argue to the court; but we cannot suppose it was intended to prevent counsel from stating legal propositions to the jury. . . Counsel cannot know what the court will charge; they cannot lay down to the jury the law as he will charge it, unless they be gifted with fore-knowledge; they must, therefore, be allowed to lay down to the jury the law which they think the court will charge, or, in other words, their own view of the law; and in the light of that law argue the facts. To curtail this right within the narrow compass suggested by the ruling of the court below would be to close the mouth of the counsel, and to overthrow all fair and full trial by jury."

The "line of argument" to which ran the primary objection, or series of objections, was a valid line of argument. By it, counsel for the plaintiff sought to plant in the jury's mind three common-law defenses to a master-servant negligence case not available in an F.E.L.A. case; he then sought to show that the defense urged by this defendant was not, as it purported to be, freedom from negligence on its own part. The facts of the case appear to be that the plaintiff, who was engaged in scraping one side of an engine, was injured when an employee sprinkling the other side with potash water negligently shot the acid over onto the plaintiff, and also that there was an issue of whether the plaintiff should have immediately protected himself from further injury by removing his clothing. Accordingly, the plaintiff's "general line of argument"—the differences between the law in this case and the law in an ordinary master-servant negligence case, was, generally speaking, a proper line

of argument and there was no error in allowing counsel to continue with it. Likewise, the reading of the case in question to the court in the jury's presence (although it would take a person of naive temperament to believe that this was done without any hope of collateral benefit from the jury "eavesdropping" on the judicial language) was not reversible error. If counsel began by reading directly to the jury, the objection to this practice was sustained and the error does not appear to have been repeated. We do not think the impropriety sufficiently gross to say that the right to a fair trial demanded that the court reprimand counsel for commencing to read the case to the jury where no request for such reprimand was made, and the objection was in fact sustained. *Deen v. Baxley State Bank,* 62 Ga. App. 536 (3) (8 S. E. 2d 689). This disposes of the fifth and sixth special grounds. As to the fourth ground, certain language used by counsel was out of order—for instance, the statement that "before the passage of this act, the need for it had become a national scandal." This statement, however, referred to a state of facts which counsel had already pointed out was a historical condition existing more than seventy years ago rather than at present. The jury could not logically charge this to the defendant. It was in fact included in the objection made, but in the colloquy that followed neither court nor counsel returned to that subject, the court ruling on the latter part of the objection. Another portion of the same objection dealt with the statement that "this is the only compensation act which applies to a railroad man," which statement was true if construed to mean it is the only act under which a railroad man may receive from his employer compensation for his injuries. The specific objections set out in special ground 4 became merged in the general objection to "this line of argument" and the ruling of the trial court thereon did not constitute reversible error.

*Felton, C. J., and Nichols, J., concur in this dissent.*